## DONALD PAQUETTE *vs.* COMMONWEALTH.

Suffolk. May 6, 2003. - September 9, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Bail. Practice, Criminal,* Detainer. *Due Process of Law,* Pretrial detainees, Hearing. *Evidence,* Hearsay. *Probable Cause.*

This court upheld an order revoking a criminal defendant's bail for committing a subsequent offense during the period of his release and concluded that the third paragraph of G. L. c. 276, § 58, did not violate the defendant's substantive due process rights, as it was narrowly tailored to further the Commonwealth's legitimate and compelling interests in assuring compliance with its laws, and in preserving the integrity of the judicial process by exacting obedience to its lawful orders, which, in this case, established conditions of the defendant's pretrial release. [124-131]

In a bail revocation proceeding, procedural due process did not require determinations of probable cause and dangerousness to be made in a full-blown evidentiary hearing, where the detention was temporary, and where these determinations could be adequately presented and decided based on documents and the representations of counsel. [131-133]

In a bail revocation proceeding, a District Court judge properly relied on information in a police report offered for the truth of what it asserted, namely, that the defendant had committed a crime, when the judge determined there was probable cause to believe that the defendant had committed a crime while free on bail. [133-134]

In a bail revocation proceeding, the defendant failed to show that the judge abused his discretion and violated the defendant's due process rights when the judge correctly determined that the testimony of other witnesses who had knowledge of the circumstances surrounding the defendant's subsequent offense went to the merits of the case and not to the question of probable cause to arrest [134]; moreover, the judge memorialized his reasons for revoking the defendant's bail by completing a preprinted form that encompassed the necessary considerations that the third paragraph of G. L. c. 276, § 58, required [135].

In a bail revocation proceeding, the judge, rather than having allowed the Commonwealth to reserve its request for a bail hearing on the subsequent charge until some future date, should have proceeded to set bail on the new offense so that it might be implemented immediately in the event that the earlier charge was resolved and the defendant would otherwise be released. [135]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on October 21, 2002.

The case was reported by *Spina*, J.

*Mary E. Bennett* for Donald Paquette.

*Sharon L. Sullivan-Puccini*, Assistant District Attorney, for the Commonwealth.

*Brownlow M. Speer*, Committee for Public Counsel Services, for Committee for Public Counsel Services, amicus curiae, submitted a brief.

SPINA, J. In this case, we examine the constitutionality of paragraph three of G. L. c. 276, § 58, and consider the conditions for the revocation of a defendant's bail when he is charged with committing a subsequent crime during the period of his release on bail. A judge in the District Court ordered that Donald Paquette (defendant) be held without bail under this statutory provision for his alleged violation of an abuse prevention order issued pursuant to G. L. c. 209A, § 7. The defendant filed a petition for relief pursuant to G. L. c. 211, § 3, challenging the judge's order. A single justice of this court reserved and reported the case, without decision, to the full court. For the reasons set forth below, we affirm the order revoking the defendant's bail.[1]

1. *Background.* The facts, as set forth by the parties in a statement of agreed facts, are as follows. On September 23, 2002, the defendant was arrested and arraigned in the Fall River District Court on a charge of violating an abuse prevention order issued pursuant to G. L. c. 209A, § 7. The alleged violation had occurred the previous day when the defendant telephoned the complainant and told her that he was coming over to her apartment to see her. Following a hearing, cash bail was set in the amount of $5,000, with conditions, and the defendant was advised of the potential for bail revocation pursuant to G. L. c. 276, § 58, if he were charged with committing a subsequent offense during the period of his release. On September 24, 2002, after a bail review hearing in the Superior Court, the defendant was released on personal recognizance.

On September 26, 2002, the defendant was again arrested and arraigned in the Fall River District Court on a charge of violating the same abuse prevention order issued pursuant to

---

[1] We acknowledge the amicus brief filed by the Committee for Public Counsel Services.

G. L. c. 209A, § 7. The alleged violation had occurred the previous day and involved another telephone call made to the same complainant. The Commonwealth requested that the judge revoke the defendant's bail on the prior charge. The defendant was held overnight, pending a bail revocation hearing the next day. At the hearing, the Commonwealth argued that bail revocation was warranted because the defendant had been given a bail revocation warning and had committed a new offense on September 25, 2002. The Commonwealth presented to the court the police report for the September 25 incident and the defendant's board of probation record. The judge found probable cause to believe that the defendant had committed a new crime during the period that he had been free on bail. The judge further determined that the release of the defendant would seriously endanger another person and the community, and that the defendant's detention was necessary to reasonably assure their safety. Accordingly, the judge revoked the defendant's bail. The judge filled out a form entitled "Revocation of Terms of Release" that set forth his findings and his revocation order pursuant to G. L. c. 276, § 58.[2]

Later that same day, defense counsel requested that the bail revocation proceeding be reopened. Defense counsel informed the judge that, after the hearing, he had been approached by two witnesses who cast doubt on whether the defendant had, in fact, violated the abuse prevention order. Defense counsel sought the opportunity to present the testimony of these two witnesses and argued that, pursuant to G. L. c. 276, § 58, the court could not fairly deny his request for a further hearing on the issue of probable cause. The judge stated that he had already found probable cause based on the statements from the district attorney and the police report. The judge pointed out that the defendant had been given a hearing, that the defendant's arguments went to the merits of the case, and that defense counsel could file a motion to dismiss the case if he had evidence that the crime had not been committed. The judge denied the defendant's request for a further hearing. Defense counsel then

---

[2]The defendant was ordered held without bail until November 8, 2002, the date of his pretrial hearing. There is nothing in the record to indicate what has happened to the defendant's case since that time.

filed a motion requesting findings of fact and rulings of law from the judge in support of his decision to revoke the defendant's bail. The motion was denied.

On October 7, 2002, the defendant filed in the Superior Court an emergency petition for writ of habeas corpus, challenging the legality of his pretrial detention based on the bail revocation proceeding. The defendant claimed that such proceeding violated G. L. c. 276, § 58, and his rights to due process under the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and arts. 1, 7, 12, and 26 of the Massachusetts Declaration of Rights. The sheriff of Bristol County, represented by the Attorney General, filed a motion to dismiss the petition for writ of habeas corpus. Following a hearing, a judge denied the defendant's petition and dismissed the case for lack of jurisdiction. The defendant then filed his petition for relief pursuant to G. L. c. 211, § 3.

2. *Constitutional claims.* The thrust of the defendant's arguments is that the third paragraph of G. L. c. 276, § 58, is unconstitutional because it violates the substantive and procedural due process provisions of the Fourteenth Amendment and arts. 1, 10, and 12. He contends that this statutory provision is not narrowly tailored to further a compelling government interest because it permits the pretrial detention of defendants charged with the commission of *any* subsequent offense during the period of their release on bail, not merely those defendants charged with committing acts of physical force or violence whose release may actually pose a danger to the community. The defendant argues that the judge's mandatory statutory inquiry into dangerousness essentially creates a broad preventive detention scheme that is punitive in nature without a finding of the defendant's guilt beyond a reasonable doubt. Furthermore, the defendant contends that the third paragraph of G. L. c. 276, § 58, is unconstitutional because it does not provide adequate procedural safeguards against the erroneous deprivation of liberty where pretrial detention may be ordered, at the judge's discretion, on a mere suspicion of dangerousness.[3]

(a) *Substantive due process.* "So-called 'substantive due

---

[3] In his brief, the defendant also asserts that G. L. c. 276, § 58, violates the equal protection clause of the Fourteenth Amendment to the United States

process' prevents the government from engaging in conduct that 'shocks the conscience,' *Rochin* v. *California*, 342 U.S. 165, 172 (1952), or interferes with rights 'implicit in the concept of ordered liberty,' *Palko* v. *Connecticut*, 302 U.S. 319, 325-326 (1937)." *United States* v. *Salerno*, 481 U.S. 739, 746 (1987). Where, as here, the right involved, freedom from physical restraint, is "fundamental," we " 'must examine carefully the importance of the governmental interests advanced and the extent to which they are served by the challenged regulation,' *Moore* v. *East Cleveland*, 431 U.S. 494, 499 (1977)." *Aime* v. *Commonwealth*, 414 Mass. 667, 673 (1993). See *Commonwealth* v. *Bruno*, 432 Mass. 489, 503 (2000). A State "may impose a regulatory restraint on the individual in narrowly-circumscribed situations." *Aime* v. *Commonwealth, supra* at 677-678. A statute imposing such a restraint typically will be upheld only if it is "narrowly tailored to further a legitimate and compelling governmental interest." *Id.* at 673. See *Commonwealth* v. *Querubin, ante* 108, 116 (2003).

General Laws c. 276, § 58, sets forth the conditions both for a defendant's initial release on bail pending adjudication of the charges against him, and for the possible revocation of bail if he is charged with committing a subsequent offense during the period of his release. The first paragraph of § 58 provides, in relevant part:

"A justice or a clerk or assistant clerk of the district court . . . in accordance with the applicable provisions of section fifty-seven, shall, when a person is held under arrest or committed either with or without a warrant for an offense other than an offense punishable by death . . . hold a hearing in which the defendant and his counsel, if any, may participate and inquire into the case and shall admit such person to bail on his personal recognizance without surety unless said justice, clerk or assistant clerk . . .

Constitution and art. 1 of the Massachusetts Declaration of Rights, as amended, because it provides defendants with fewer due process protections in determining pretrial release than are afforded to similarly situated individuals under G. L. c. 276, §§ 58A and 58B. The defendant did not specifically raise this issue either at his bail revocation hearing before the District Court judge or in his petition for relief pursuant to G. L. c. 211, § 3. Accordingly, this issue has been waived. See *Commonwealth* v. *Doe*, 405 Mass. 676, 681 n.4 (1989).

determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person before the court."

The preferred result under G. L. c. 276, § 58, is release on personal recognizance. See *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999), and cases cited. "This statute 'was not intended to give the courts discretion to deny bail but rather to establish the right of the accused, in most circumstances, to be admitted to bail.' " *Commonwealth* v. *Finelli*, 422 Mass. 860, 863 (1996), quoting *Commonwealth* v. *Roukous*, 2 Mass. App. Ct. 378, 381 (1974). See *Commonwealth* v. *Hampe*, 419 Mass. 514, 519 (1995) ("an arrestee must be released on bail without surety unless there is a risk that he will not appear in court"); *Delaney* v. *Commonwealth*, 415 Mass. 490, 495 (1993) ("Our Legislature intended § 58 to protect the rights of the defendant by establishing a presumption that he or she will be admitted to bail on personal recognizance without surety and by delineating carefully the circumstances under which bail may be denied").

Pursuant to the first paragraph of G. L. c. 276, § 58, when a person is originally admitted to bail, he must be advised that, as an *explicit condition* of release, "should said person be charged with a crime during the period of his release, his bail may be revoked in accordance with the third paragraph of [§ 58]."[4] The import of this clear statutory language is that the liberty interest of a person admitted to bail is conditional; if the person violates the explicit condition of his release, then his liberty can be curtailed. Cf. *Commonwealth* v. *Durling*, 407 Mass. 108, 115 (1990) (discussing conditional liberty interest of probationer). Thus, while paragraph one of G. L. c. 276, § 58, contains the preference, in most circumstances, for admitting a defendant to bail pending trial, "the keys to continued freedom are left in the pocket of the accused." *Rendel* v. *Mummert*, 106 Ariz. 233, 238 (1970).

If a defendant is charged with committing a new offense dur-

---

[4]Pursuant to the third paragraph of G. L. c. 276, § 58, the court shall enter in writing on the docket the fact that the person was informed that if he were charged with a crime during the period of his release, then his bail could be revoked. The docket shall constitute prima facie evidence that the person was so informed. *Id.*

ing the period of his release on a prior charge, the third paragraph of G. L. c. 276, § 58, requires a judge before whom the new charge is pending to make two inquiries in determining whether the defendant's bail on the prior charge may be revoked and the defendant held without bail. First, the judge must ascertain whether there is "probable cause to believe that the person has committed a crime during said period of release." G. L. c. 276, § 58, third par. Second, the court "shall then determine, in the exercise of its discretion, whether the release of said person will seriously endanger any person or the community." *Id.* A judge making this second determination must consider the factors set forth in the statute.[5] If the probable cause and dangerousness inquiries are satisfied, then the judge "*may* revoke bail on the prior charge and *may* order said person held without bail pending the adjudication of said prior charge, for a period not to exceed sixty days" (emphasis added).[6] *Id.*

Contrary to the defendant's argument, the inquiry into dangerousness under the third paragraph of G. L. c. 276, § 58, does not create a broad preventive detention scheme that is punitive in nature and arbitrarily infringes on a defendant's fundamental liberty interest. He relies on *Aime* v. *Commonwealth, supra,* where we considered the constitutionality of several 1992 amendments to the first paragraph of G. L. c. 276, § 58, which expanded the powers of District Courts to set bail at a defendant's arraignment under a preventive detention scheme "calculated to protect the public from an arrestee's claimed dangerousness." *Aime* v. *Commonwealth, supra* at 675.

---

[5]These factors include "the gravity, nature and circumstances of the offenses charged, the person's record of convictions, if any, and whether said charges or convictions are for offenses involving the use or threat of physical force or violence against any person, whether the person is on probation, parole or other release pending completion of sentence for any conviction, whether he is on release pending sentence or appeal for any conviction, the person's mental condition, and any illegal drug distribution or present drug dependency." G. L. c. 276, § 58, third par.

[6]Under G. L. c. 276, § 58B, a person who has been released after a hearing pursuant to § 58A and who has violated his condition of release, may be subject to a revocation of release and an order of detention up to ninety days. The hearing pursuant to § 58A addresses the issue of pretrial detention of persons accused of certain enumerated crimes based specifically on that person's dangerousness. See G. L. c. 276, § 58A; *Mendonza* v. *Commonwealth,* 423 Mass. 771 (1996).

In that case, we concluded that the challenged amendments violated the Fourteenth Amendment because they authorized the pretrial detention of a defendant for the purpose of protecting the public from his predicted dangerous behavior without affording him the protections of due process. *Id.* at 682-683. Rather than expand the powers of District Courts to detain defendants who are dangerous, the third paragraph of § 58 in substance creates a statutory bail revocation procedure that expands the rights of defendants by limiting the cases in which bail may be revoked to those involving defendants who have been charged with committing a subsequent serious offense and, because of the nature of the offense, constitute a danger. The power of District Courts to revoke bail under the procedure created by § 58 is thus narrower than the court's inherent power to revoke bail.

Notwithstanding the provisions of the third paragraph of G. L. c. 276, § 58, and any inquiry into dangerousness, a court has inherent power to revoke a defendant's bail for breach of any condition of release. See *Jake J.* v. *Commonwealth*, 433 Mass. 70, 78 (2000). Other jurisdictions that have considered the matter have reached a similar conclusion. See, e.g., *Rendel* v. *Mummert, supra* at 238-239 ("Pretrial release with restrictions placed upon a defendant's actions has long represented a compromise between the liberties that a person normally enjoys and the right of the [S]tate to insure compliance with its processes"); *State* v. *Ayala*, 222 Conn. 331, 346-347 (1992) (State bail statute implemented inherent judicial authority of trial court to compel compliance with conditions of release); *People ex rel. Hemingway* v. *Elrod*, 60 Ill. 2d 74, 83-84 (1975) (court has inherent authority to enforce its orders, to require reasonable conduct from those over whom it has jurisdiction, and to impose sanctions for noncompliance, including revocation of release); *Mello* v. *Superior Court*, 117 R.I. 578, 583-584 (1977) (specific statute granting judge authority to revoke bail unnecessary because court with jurisdiction over criminal case has power to enforce bail orders just as it has power to enforce other orders). Standards promulgated by the American Bar Association (ABA) are also in accordance with this view. They note that "[t]he concept of conditional pretrial release would be

meaningless if courts lacked the power to rescind release after release conditions have been violated. . . . Defendants who have violated those terms have disregarded judicial orders. As long as they are proceeded against in a constitutionally fair fashion, they may be incarcerated in the same manner as persons convicted of contempt." *Rendel* v. *Mummert, supra* at 238-239 ("Pretrial release with restrictions placed upon a defendant's actions has long represented a compromise between the liberties that a person normally enjoys and the right of the [S]tate to insure compliance with its processes"). ABA Standards for Criminal Justice, Pretrial Release Standards § 10-5.8(a), at 129 (1989). See *Commonwealth* v. *Dodge,* 428 Mass. 860, 862-863 (1999) (violation of order of release subject to conditions sufficient basis to warrant judgment of criminal contempt). A defendant who commits any offense while free on bail or on personal recognizance may have his bail (or recognizance) revoked under the inherent powers of a court. In these circumstances, the revocation of bail is a necessary step to ensure compliance with our legal system and preserve its integrity. A defendant cannot be heard to complain that his constitutional right to liberty has been violated when continued freedom was entirely within his own control, and the deprivation thereof was an inevitable consequence of his alleged failure to conform his conduct to the laws of this Commonwealth and to the explicit condition of his earlier release.

Although the public may benefit indirectly from the detention of a defendant whose bail is revoked pursuant to the third paragraph of § 58 because he may be dangerous, the purpose of § 58 is not "calculated to protect the public" from a dangerous person, *Aime* v. *Commonwealth, supra* at 675, but to assure compliance with its laws and to preserve the integrity of the judicial process by exacting obedience with its lawful orders. Subsequent legislation buttresses this construction of § 58. A significant aspect of the Legislature's response to our decision in *Aime* was the enactment of G. L. c. 276, § 58A, a broad preventive detention scheme that allows a judge to detain, before trial, a person accused of certain crimes on the ground of that person's dangerousness, see *Mendonza* v. *Commonwealth,* 423 Mass. 771 (1996) (upholding constitutionality of preventive detention

scheme of G. L. c. 276, § 58A), and the enactment of G. L. c. 276, § 58B, which allows a judge to revoke the bail of such dangerous person for the violation of a condition of his release. See St. 1994, c. 68, § 6. The Legislature is presumed to be aware of existing statutes when it amends a statute or enacts a new one. See *Commonwealth* v. *Russ R.*, 433 Mass. 515, 520 (2001); *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994). In addition, when two or more statutes relate to the same subject matter, "they should be construed together so as to constitute a harmonious whole," create a consistent body of law, and give full effect to the expressed intent of the Legislature. *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). See *Everett* v. *Revere*, 344 Mass. 585, 589 (1962). If the Legislature had intended to utilize bail revocation under the third paragraph of G. L. c. 276, § 58, as a broad preventive detention scheme with a focus on dangerousness, then the promulgation of G. L. c. 276, §§ 58A and 58B, would have been duplicative and unnecessary. See *Boston Water & Sewer Comm'n* v. *Metropolitan Dist. Comm'n*, 408 Mass. 572, 578 (1990) (Legislature presumed to understand and intend all consequences of its acts). That the Legislature appreciated the distinction between G. L. c. 276, § 58, and G. L. c. 276, § 58A, and realized that bail revocation was not preventive detention, is readily apparent from the different criteria for dangerousness under each statute, the difference in the period of detention (sixty days pursuant to § 58, and ninety days pursuant to § 58A), the permissive language of the third paragraph of § 58 (court *may* revoke bail) versus the mandatory language of § 58A (3) (justice *shall* order detention), and the language of the last paragraph of § 58, as amended through St. 1994, c. 68, § 5, legislation that inserted § 58A, which indicates that orders for preventive detention will be determined under § 58A.[7]

---

[7]The defendant has argued that the bail revocation hearing held by the District Court in this case violated his due process rights because the last paragraph of G. L. c. 276, § 58, mandates that, where the Commonwealth seeks an order of pretrial detention based on dangerousness for an offense enumerated in G. L. c. 276, § 58A, then a hearing must be held pursuant to the provisions of § 58A (4). As we have discussed, a hearing pursuant to § 58A to allow preventive detention of dangerous individuals is not analogous to a hearing pursuant to § 58 to allow revocation of bail for breach of an explicit condition of release. As a consequence, a defendant is not entitled to the same due process rights under § 58 as are afforded under § 58A.

We conclude that the third paragraph of G. L. c. 276, § 58, is narrowly tailored to further the Commonwealth's legitimate and compelling interests in assuring compliance with its laws, and in preserving the integrity of the judicial process by exacting obedience to its lawful orders which, in this case, established conditions of the defendant's pretrial release. It does not violate principles of substantive due process.

(b) *Procedural due process.* "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. *Mathews* v. *Eldridge*, 424 U.S. 319, 335 (1976). This requirement has traditionally been referred to as 'procedural' due process." *United States* v. *Salerno*, 481 U.S. 739, 746 (1987). A fundamental requisite of "procedural" due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U.S. 545, 552 (1965). The concept is flexible, see *Roe* v. *Attorney Gen.*, 434 Mass. 418, 427 (2001), and the features of the required hearing will be determined by the "nature of the case." *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). The potential deprivation of liberty implicates the protections of procedural due process. See *Commonwealth* v. *Travis*, 372 Mass. 238, 250 (1977) (due process protections attach to proceedings for civil commitment of sexually dangerous persons because of potential for loss of liberty). "In determining what process is due . . . this court 'must balance the interests of the individual affected, the risk of erroneous deprivation of those interests and the government's interest in the efficient and economic administration of its affairs.' " *Commonwealth* v. *Barboza*, 387 Mass. 105, 112, cert. denied, 459 U.S. 1020 (1982), quoting *Thompson* v. *Commonwealth*, 386 Mass 811, 817 (1982). See *Mathews* v. *Eldridge, supra* at 334-335.

The first inquiry at a bail revocation proceeding under § 58 is whether, after a hearing at which the defendant shall have the right to be represented by counsel, there is probable cause to believe that the defendant committed a crime during the period of his release. See G. L. c. 276, § 58, third par. Contrary to the defendant's argument, the probable cause to arrest standard, rather than the standard of probable cause to bind over ("directed verdict") set forth in *Myers* v. *Commonwealth*, 363

Mass. 843 (1973), is appropriate to a bail revocation hearing. Such test for probable cause is objective. See *Commonwealth* v. *Franco*, 419 Mass. 635, 639 (1995). "[P]robable cause exists where, at the moment of arrest, the facts and circumstances within the knowledge of the police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense." *Commonwealth* v. *Landry*, 438 Mass. 206, 210 (2002), quoting *Commonwealth* v. *Santaliz*, 413 Mass. 238, 241 (1992). " 'Probable cause is a relatively low threshold,' requiring only sufficiently trustworthy information to instill in a reasonable person the requisite belief of criminality." *Richardson* v. *Boston*, 53 Mass. App. Ct. 201, 206 (2001), quoting *White* v. *Marblehead*, 989 F. Supp. 345, 349 (D. Mass. 1997). It is the standard by which a criminal complaint issues, see G. L. c. 218, § 35A, and a defendant is reintroduced into the judicial system, effectively notifying a judge that the condition of release on the prior charge has been violated.

The probable cause to bind over standard requires a judge to view the case as if it were a trial and to determine whether the Commonwealth has presented sufficient legally competent evidence to send the case to a jury. See *Myers* v. *Commonwealth, supra* at 849-850. The primary purpose of a bind-over hearing, which is an adversary proceeding in nature, is to screen out those cases that should not go to trial. *Id.* at 852. This is neither a function nor a component of a bail revocation hearing. Moreover, a bind-over hearing is held after a complaint has been filed, the defendant has been arraigned, and the pretrial detention determination has been made. See G. L. c. 276, § 38. In contrast, a bail revocation hearing "shall be held upon the person's first appearance before the court before which the person is charged with committing an offense while on release pending adjudication of a prior charge." G. L. c. 276, § 58, third par. The third paragraph provides the court with an appropriate mechanism for handling defendants who have failed to abide by conditions of their pretrial release and is not aimed at testing the sufficiency of the Commonwealth's case at trial. Cf. *Rendel* v. *Mummert*, 106 Ariz. 233, 238 (1970); *State* v. *Ayala*, 222 Conn. 331, 348 (1992); *People ex rel. Hemingway* v. *Elrod*, 60 Ill. 2d 74, 83 (1975).

If probable cause has been established as to the new offense, the next inquiry is whether the release of such person will seriously endanger any person or the community. The Legislature has committed the second inquiry to the discretion of the judge. The criteria for making the second determination are expressly set forth in the third paragraph of § 58. They are straightforward and easily understood, and are not unconstitutionally vague. Cf. *Commonwealth* v. *Querubin, ante* 108, 120 (2003). As such, the statute does not violate principles of procedural due process.

The determinations of probable cause and dangerousness can be made without a full-blown evidentiary hearing and without "significant risk of an erroneous deprivation of liberty." *Commonwealth* v. *Querubin, supra* at 118, citing *Thompson* v. *Commonwealth*, 386 Mass. 811, 817 (1982). The detention is temporary, and a defendant "so held shall be brought to trial as soon as reasonably possible." G. L. c. 276, § 58, third par. A bail revocation proceeding is not intended to be a mini-trial, and the rules of evidence do not apply. Cf. *Commonwealth* v. *Querubin, supra*. These determinations can be adequately presented and decided based on documents (e.g., police reports) and the representations of counsel. Nevertheless, an evidentiary hearing with the right to present and cross-examine witnesses, or some variation, may be held in the judge's discretion when the circumstances of a particular case warrant.

3. *Sufficiency of the evidence.* The defendant argues that the judge relied on unreliable hearsay in making his determination that there was probable cause to believe that the defendant had committed a crime while free on bail. After the conclusion of the bail revocation hearing in the District Court, the judge stated that he had found probable cause to believe that the defendant had violated a c. 209A order during the period of his release, based on the district attorney's statements concerning the crime and on the police report that had been presented. In that report, Detective J.D. Costa of the Fall River police department stated that on September 26, 2002, he had spoken with the complainant, who had informed him that she had obtained a protective order against the defendant, her former boy friend. Detective Costa verified this fact with the Probate Court in

Taunton. The complainant told Detective Costa that she had received a telephone call from the defendant's friend, Andy Cloutier, who had told her, "I'm calling for [the defendant], and he said that he is going to get back at you and try to get the kid." Based on this information, the defendant was arrested. While Detective Costa was transporting the defendant to the police station, the defendant stated that he had never telephoned the complainant, that he had told Cloutier not to telephone the complainant, and that it was the complainant who had telephoned him to say that she was throwing out his clothes.

The police report, which was offered for the truth of what it asserted, namely, that the defendant had committed a crime, was hearsay. While a judge's determination of probable cause to bind a defendant over for trial must be based on competent testimony that would be admissible at trial, determinations of probable cause to arrest can be based solely on hearsay testimony. See *Myers* v. *Commonwealth, supra* at 849 n.6. Statements of victims to police are sufficiently reliable for the purpose of establishing probable cause to arrest. See *Commonwealth* v. *Cruz*, 373 Mass. 676, 684 (1977). Statements of police officers concerning their own observations and a description of their own activities, as well as those of other officers, are similarly reliable for purposes of establishing probable cause. See *Commonwealth* v. *Antobenedetto*, 366 Mass. 51, 55 (1974). Here, the judge could properly rely on the information in the police report to make a determination of probable cause to believe that the defendant had committed a crime while free on bail.[8]

4. *Other issues.* The defendant contends that the judge violated his due process rights by refusing to reopen the bail revocation hearing and allow him to present the testimony of witnesses who had knowledge of the circumstances surrounding the subsequent offense. Whether to reopen a hearing is a matter within the discretion of the judge. See *Commonwealth* v. *Lopez*, 433 Mass. 406, 414 (2001). Here, the judge correctly determined that the proffered testimony went to the merits of the case, and

---

[8]Where a clerk-magistrate has already made a determination of probable cause to believe that the defendant has committed a crime, a judge may rely on that determination alone.

not to the question of probable cause to arrest. The defendant has failed to show that the judge abused his discretion.

The defendant asserts that his due process rights were violated when the judge failed to provide a written statement of the reasons why the defendant's bail was being revoked, and that the judge failed to find that his release "will seriously endanger any person or the community and that the detention of the [defendant] is necessary to reasonably assure the safety of any person or the community." G. L. c. 276, § 58, third paragraph. We disagree. Contrary to the defendant's assertion, the judge memorialized his reasons by completing a preprinted form entitled "Revocation of Terms of Release," which encompassed the necessary considerations required by the third paragraph of G. L. c. 276, § 58. Cf. *Commonwealth* v. *Gonsalves*, 437 Mass. 1022 (2002) (no requirement that single justice engage in factor-by-factor analysis or make detailed written findings where it appears that appropriate factors considered).

Finally, we address the relationship between the revocation of bail on the earlier charge and the setting of bail on the new offense. After the judge revoked the defendant's bail on the original charge, he allowed the Commonwealth to "reserve" its request for a bail hearing on the subsequent charge until the defendant's term of detention on the revocation had concluded. Because the defendant had been arrested on the subsequent offense and had not been "released on his personal recognizance without surety" before arraignment on the new charge, he was entitled to "forthwith be brought before the next session of the district court for a review of the order to recognize in accordance with the standards set forth in [§ 58]." G. L. c. 276, § 58, third par. There is no authority for the Commonwealth's assertion that it can "reserve" its right to a bail hearing on the subsequent charge until some future date. Moreover, there may be serious practical consequences to a failure to set bail on the subsequent offense. For example, if the original charge were to have been resolved within sixty days without imposition of a direct sentence, there would be nothing holding the defendant on the subsequent charge. Thus, notwithstanding an order revoking bail on the earlier charge, the judge should proceed to set

bail on the new offense, thereby establishing the defendant's bail status so that it may be implemented immediately in the event that the earlier charge is resolved in a manner that would release the defendant.

5. *Conclusion.* The order revoking the defendant's bail is affirmed.

*So ordered.*