Feeley, Timothy Q., J.
This is a Chapter 30A appeal of the July 15, 2016 final decision of the Sex Offender Registry Board (“SORB” or the “Board”) classifying plaintiff John Doe (“Doe”) as a level two sex offender. Immediately upon receipt of an e-mail copy of the decision at about 9:30 a.m. on July 15th, and knowing of SORB’s policy of same-day publication of a newly classified sex offenders’ (level two and three) registry information on its website, counsel for Doe contacted SORB, informed SORB that she was going to prepare and submit to the court later that day a complaint and amotion to prohibit/stay Internet publication ofDoe’s registry information. Doe’s counsel requested that SORB delay posting Doe’s registry information on its website until Doe’s intended motion for an injunction could be considered by the court. Just before 4:00 p.m., Doe’s complaint and motion for a TRO/preliminary injunction was filed with the court. However, no later than 12:00 noon, SORB had posted Doe’s registry information on its website. In response to Doe’s request for a TRO, and given that Doe’s registry information was already on SORB’s website, the court issued a short order of notice and the parties appeared in court on July 18, 2016. The above facts were confirmed by SORB, but other facts remained unclear. It was unclear to the court (Feeley, J.) whether any member of SORB’s legal department refused Doe’s request to delay posting to its website, or whether Doe’s information, despite notice of Doe’s intention to seek immediate judicial intervention, was posted to the website as part of SORB’s standard practice and policy to post registry information the same day a final classification decision is issued. SORB was previously warned by this court in an earlier classification matter that it should not prevent sex offenders from a meaningful opportunity to seek judicial intervention prior to Internet publication of a sex offender’s registry information. Doe, SORB No. 298384 v. Sex Offender Registry Board, Essex Superior Court No. 2015-01848-A, Memorandum Dated November 23, 2015 (Feeley, J.). By its actions, despite a request to delay Internet publication, SORB prevented Doe from seeking meaningfut judicial intervention in a legitimate effort to prevent irreparable harm if Doe is successful *599 in his Chapter 30A appeal to have his classification level reduced to level one. See Moe v. Sex Offender Registry Board, 467 Mass. 598, 606 (2014) (injury to sex offenders “that could arise from Internet publication would likely be irreparable, even if SORB were later to reduce their classification to level one or release them from the obligation to register”); Doe v. Attorney Gen. (No. 2), 425 Mass. 217, 222 (1997) (once sex offender information is obtained and distributed with no remedial motive, “at best it will not easily be remediable”).
The court (Feeley, J.) issued an order that SORB withdraw Doe’s registry information from its website, withdraw Doe’s registry information from public availability, and otherwise treat Doe’s registry information as if Doe were classified as a level one sex offender, pending further order of the court. In addition, a hearing was scheduled in order to complete the factual record and to address the constitutionality of SORB’s practice/policy to post sex offender registry information on its website the same day the final classification decision issues, and whether such a practice interferes with the fair administration of justice by preventing the court from considering judicial intervention (in the form of a stay of Internet publication) before a sex offender’s registry information is published on the Internet.
An evidentiary hearing was held on August 5,2016. SORB was represented by an Assistant Attorney General (“AAG”). Before taking evidence, the court marked eighteen exhibits, consisting of the written order scheduling the hearing [Ex. 1], and written decisions/ orders by the undersigned associate justice in prior Chapter 30A appeals of classification decisions. Exhibits 2-8 are orders staying Internet publication of registry information sought by sex offenders. Exhibits 9-18 are decisions vacating final classification decisions, or in two cases, granting a new hearing before SORB. Exhibit 19 is the affidavit of William Burke, SORB’s General Counsel (“Attorney Burke”), which was submitted the day before the hearing, along with a written memorandum signed by the AAG. Exhibits 20-23 were submitted by Doe at the hearing. Three of the exhibits are affidavits from other counsel who represent sex offenders in Chapter 30A appeals of their final classification levels. Exhibits 24 and 25 were submitted by Doe later in the day of the hearing. Exhibit 24 is another affidavit from an attorney who represents sex offenders in Chapter 30A appeals of their final classification levels. Exhibit 25 is a printout from a private website unrelated to SORB that reflects that Doe is posted as a registered sex offender on the private website.
At the hearing, Attorney Burke answered questions from the court to clarify and expand upon his submitted affidavit. Robert DePardo, a registration specialist for SORB (“DePardo”), and the person who sends classification decisions to counsel of record, was sworn and testified. He responded to questions from the court and Doe’s counsel. SORB passed on further questioning. Now that the factual record is complete and the parties have been provided a meaningful opportunity to address the constitutional and administration of justice issues raised by SORB’s same-day Internet publication policy, the court makes the following findings and rulings.
FACTUAL BACKGROUND
On Friday morning July 15, 2016, sometime before 9:30 a.m., DePardo received the written decision of the hearing examiner classifying Doe as a level two sex offender. He made no database entry of the decision or of Doe’s registry information into SORB’s website, as that was apparently routinely done by hearings unit personnel before he received the decision. DePardo is, perhaps among others, responsible for notifying counsel of record of the hearing examiner’s classification decision. That notification in all instances prior to July 15,2016, was made by DePardo by placing the written decision in SORB’s mail system, for delivery to the United States Postal Service. He has historically received classification decisions throughout the day, and would send them out upon his receipt, even if not received until the afternoon, or the late afternoon.[1] In accordance with a recently instituted practice, and if requested by counsel for sex offenders, SORB will notify counsel of classification decisions by fax or e-mail, to a provided fax number or e-mail address.
In this case, on July 15, 2016, DePardo for the first time in his experience at SORB used e-mail to notify a sex offender’s counsel of the issuance of the hearing examiner’s classification decision.[2] He did so at 9:36 a.m. Consistent with SORB’s practice, no notice was provided in DePardo’s e-mail as to the anticipated timing of the public availability of Doe’s registry information on SORB’s website. Immediately thereafter, he received a reply from Doe’s counsel informing him that she was in the process of seeking a court order to stay Internet publication. She requested that SORB not publish Doe’s registry information on its website before day’s end. At 10:00 a.m., DePardo responded to Doe’s counsel and informed her that she needed to direct any questions or concerns to SORB Attorney John Bosse (“Attorney Bosse”), who had represented SORB at the classification hearing. Doe’s counsel sent an e-mail to Attorney Bosse at 10:16 a.m. repeating her earlier request to delay Internet publication of Doe’s registry information until day’s end, so that she could seek a judicial order staying such publication. No response/reply from Attorney Bosse or SORB was received by Doe’s counsel. Attorney Bosse never received the e-mail, as he was out of the office on a pre-scheduled leave day and had apparently not used a widefy-available e-mail tool to reply automatically to received e-mails informing senders that he was out of his office for the day. Doe’s counsel checked SORB’s website sometime around 10:00 a.m., and Doe’s reg *600 istry information was not included. She checked again at 12:00 noon, at which time Doe’s registiy information was on SORB’s website.
Attorney Burke did receive notice of or a copy of Doe’s counsel’s request to delay Internet publication to day’s end, sometime between 10:00-11:00 a.m. He did not reach out to or contact Doe’s counsel to acknowledge her request, or to inform her that SORB would comply with the request. He also did not contact her to set up a process whereby a court order, if issued late in the day, could be complied with before Doe’s registiy information was posted on SORB’s public website. At the time Attorney Burke learned of Doe’s request for delay, he was under the impression, that he has since learned was wrong, that Doe’s registiy information, although already inputted into SORB’s website, would not be visible/available to the public on the website until the database was automatically “refreshed” at 5:30 p.m. Relying on his incorrect understanding of SORB’s website procedures, he took no action on Doe’s request for delay, as he concluded that SORB’s same-day posting policy would delay Internet publication, as requested by Doe’s counsel, until 5:30 p.m.[3] As already noted, he did not give Doe’s counsel the professional courtesy of informing her that SORB, following its standard policy, would honor her request for delay to day’s end.
Attorney Burke was wrong, whether through his own neglect and inattention to detail, or through incomplete training on SORB’s website procedures, the court cannot say. Attorney Burke is one of several managers at SORB trained and authorized to make non-routine changes to SORB’s website. SORB more than occasionally needs to correct website information or remove registry information from the website in order to comply with court orders to that effect. [See Exhibits 3-8.] On two occasions on July 15th Attorney Burke accessed SORB’s website and removed offender information pursuant to court orders. In so doing, he manually “refreshed” thewebsite. That is, bymanually “refreshing” the website (database), he also advanced the public availability of sex offender registiy information placed in the database earlier in the day, and that would not otherwise have become publicly available on the website until 5:30 p.m. He manually refreshed the database at 9:15 a.m., which did not add Doe’s registiy information to the website. He manually refreshed the database at about 10:00 a.m., which did add Doe’s registry information to the public website. The court accepts Attorney Burke’s assertion that he was unaware of the consequences of a manual “refresh” and that he did not intentionally disregard Doe’s counsel’s request to delay Internet publication to day’s end.[4] Because SORB contends that the morning publication of Doe’s registiy information was unintentional, and that in ignoring Doe’s request for delay, it relied on its “end of same day (5:30 p.m.) Internet publication policy,” it is necessary for this court to consider and rule on the lawfulness of SORB’s same-day publication policy.
Classification decisions are issued by hearing examiners in accordance with no set schedule. Although SORB would like to see issued decisions within sixly days of the conclusion of the hearing, no such policy is in place. As there is no set policy regarding the timing of the issuance of classification decisions, counsel for sex offenders have no advance knowledge of when classification decisions will issue. Requests to hearing examiners for a stay of Internet publication (where applicable) upon issuance of the final classification decision are routinely denied. [Ex. 24.] Hearing examiners claim, erroneously in this court’s view, that they have no statutory authority to stay classification decisions. See G.L.c. 30A, §14(3). SORB admits that it has never, although statutorily authorized to do so, stayed Internet publication or other dissemination of a sex offender’s registry information upon issuance of a final classification decision, except upon receipt of a court order requiring them to do so.
DISCUSSION
Upon original enactment, the Sex Offender Registry Act (the “Act”) did not provide for Internet publication of any information regarding any sex offender. See St. 1996, c. 239, §1. Internet publication of registiy information was first required through an amendment in 2003, but was limited to registiy information regarding level three sex offenders. G.L.c. 6, §178D, as amended through St. 2003, c. 140, §5. Since July 12, 2013, the Act has required that Internet publication, that is, through SORB’s publicly available website, include the registiy information of level two sex offenders. Id., as amended through St. 2013, c. 38, §§7, 9. More specifically, the Act now requires SORB to make available for inspection by the general public on its comprehensive data base published on the Internet the registiy information of level two and three sex offenders. Id. The words immediately or forthwith are not included in the legislative directive to include sex offender registiy information for level two and three offenders on SORB’s website. The Act is silent as to when, in relation to issuance of its classification decisions, registiy information must be published on the Internet. The Act, by its silence, leaves the timing of Internet publication to the sound discretion of SORB, subject of course to the constitutional procedural due process rights of sex offenders. SORB reads the statute as if it mandated immediate Internet publication. It does not, although mis-reading the Act is not SORB’s only or even most egregious failing. SORB has ignored the constitutional mandate that its classification proceedings, including its Internet publication policy, must comport with the procedural due process rights of sex offenders.
SORB contends that under the Act and under Chapter 30A, “the Board may immediately publish on the Internet the registration information of a sex of *601 fender who is finally classified as a Level Two or Level Three offender.” The court disagrees. Even if the Act mandated immediate Internet publication (which it does not), such a requirement cannot stand in opposition to the due process rights of sex offenders. The United States Constitution is the supreme law of the land, and unconstitutional laws, regulations, and state policies/actions must give way. See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177-80 (1803) (United States Constitution is supreme law of the land and no act prohibited by it can be given effectuality and validity); U.S. Const. Art VI, §2.
SORB also relies on the Act, which states: “the filing of an action under this section shall not stay the effect of the board’s final classification.” G.L.c. 6, §178M. Chapter 30A is to the same effect, except Chapter 30A grants the agency, here SORB, the authority to stay enforcement of the classification decision, and acknowledges that a reviewing court, that is, the superior court, “may order a stay upon such terms as it considers proper.” G.L.c. 30A, §14(3). A legislatively mandated non-automatic stay, but with legislatively authorized discretionary stays by either SORB or the Superior Court, does not require (or even permit) immediate Internet publication without consideration and compliance with the constitutional rights of sex offenders. The Supreme Judicial Court has repeatedly “emphasized that the sex offender registration requirement ‘implicates constitutionally protected liberty and privacy issues.’ ” Doe, No. 68549 v. Sex Offender Registry Board, 470 Mass. 102, 106 (2014), quoting Doe, No. 205614 v. Sex Offender Registry Board, 466 Mass. 594, 596 (2013), citing Doe v. Attorney Gen., 426 Mass. 136, 144 (1997). “Careful and individualized due process is necessary to sort sexual predators likely to repeat their crimes from large numbers of offenders who pose no danger to the public, but are nonetheless caught in the statute’s far-flung net of registration.” Doe, No. 205614, 466 Mass. at 596, quoting Doe, No. 972 v. Sex Offender Registry Board, 428 Mass. 90, 105 (1998) (Marshall, J., concurring in part and dissenting in part).
The existence of a constitutionally protected liberty interest means that some process is due before the government may deprive that person of that interest. Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As stated by the Supreme Judicial Court: “We have recognized, however, that because the registration law implicates significant liberty interests of sex offenders [citation omitted], it is necessary that the law be tailored to achieve its purpose and that it provide the procedural protections required by due process.” Doe, No. 89230 v. Sex Offender Registry Board, 452 Mass. 764, 772 (2008).
Due process requires “balanc[ing] the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the government interests involved.” Doe, No. 972, 428 Mass. at 100, citing Mathews, 424 U.S. at 335. In Mathews, the United States Supreme Court declared that the determination of how much process is due requires consideration of three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Id. at 335. See also Doe, No 380316 v. Sex Offender Registry Board, 473 Mass. 297, 311 (2015) (same). “[D]ue process is flexible and calls for such procedural protections as the particular situation demands.” Mathews, 424 U.S. at 334, quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972).
Here, applying the Mathews factors, the magnitude of the private interest affected by Internet publication is enormous and well recognized. See Moe, 467 Mass. at 604 (“(P)ublic identification of a sex offender poses a risk of serious adverse consequences to that offender, including the risk that the sex offender will suffer discrimination in employment and housing, and will otherwise suffer from the stigma of being identified as a sex offender, which sometimes means the additional risk of being harassed or assaulted”). Registration represents a “continuing, intrusive, and humiliating regulation of the person himself.” Doe, No. 380316, 473 Mass. at 307, quoting Doe, 426 Mass. at 149 (Fried, J. concurring). “The permanence of level two and level three classification attaches special importance to the accuracy of the classification in the first instance.” Doe, No. 380316, 473 Mass. at 307. “The recent Internet dissemination requirements in particular have increased the extent of the private interests affected by classification.” Id. at 307. Level two classifications “now ha[ve] dramatic consequences for [a sex offender’s] liberty and privacy interests that were not present when [the Supreme Judicial Court established a preponderance of the evidence burden of proof in classification proceedings in 1998].” Id. at 311. “The harm to the State from an erroneous un-derclassification,” however, is no longer “nearly equal to the possible harm to Doe from erroneous over-classification.” Id. at 312.
Second, the court finds, in part from its own experience, that a significant risk exists of erroneous deprivation of a sex offender’s liberty and privacy interests through over-classification by SORB. The Supreme Judicial Court has noted, although under the long-standing, but recently replaced regulations, that concerns have been raised as to the accuracy of the risk classifications that SORB must make. Doe, No. 380316, supra. In recently raising the burden of proof in classification proceedings to clear and con *602 vincing evidence, the Supreme Judicial Court recognized the possibility, based on published studies, that “SORB may be overclassifying offenders.” Id. The Supreme Judicial Court has also concluded that SORB was wrong in its restricted view of the rights of indigent sex offenders to obtain funds for experts, its view that it need not consider the effect of age on sexual recidivism, and that it could evaluate female sex offenders without regard to the accepted view that male and female sex offenders present different risks of sexual recidivism. Doe, No. 89230 v. Sex Offender Registry Board, 452 Mass. 764 (2008) (expert funds); Doe, No. 151564 v. Sex Offender Registry Board, 456 Mass. 612 (2010) (age); Doe, No. 205614 v. Sex Offender Registry Board, 466 Mass. 594 (2013) (female sex offenders). In theoiy, when the burden of proof was by a preponderance, and judicial review is required to be deferential under Chapter 30A, few if any classification decisions should be overturned as an abuse of SORB’s discretion. That has not been this court’s experience. Here, theoiy and reality are different. With disturbing frequency, this court has found that SORB has abused its discretion in its classification decisions. [See Exs. 9-18.)
The probable value, if any, of additional or substitute procedural safeguards regarding Internet publication of registry information is high. SORB’s same-day publication policy effectively interferes with the fair administration of justice and prevents meaningful judicial intervention to stay Internet publication. Seeking a stay of Internet publication does not mean that the stay will be obtained. Not every level two offender, and certainly not eveiy level three offender, will be able or even likely to obtain a court injunction staying Internet publication. Such offenders would still have a heavy burden to show that they were likely to succeed on the merits of their claim that they should be classified no higher than level one. “The sine qua non of this [PI] inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.” New Comm Wireless Servs., Inc. v. SprintCom Inc., 287 F.3d 1, 9 (1st Cir. 2002). But SORB, in this court’s view, and as this court has stated before, should not prevent sex offenders from a meaningful opportunity to seek judicial intervention, particularly where the irreparable harm is so widely recognized. See Doe, SORB No. 298384 v. Sex Offender Registry Board, Essex Superior Court No. 2015-01848-A, Memorandum Dated November 23, 2015 (Feeley, J.). Seeking such a stay is not an exercise in futility. With some frequency, this court has been willing, on an emergency basis but after Internet publication occurred because of SORB’s same-day publication policy, to issue a stay and order SORB to remove the sex offender’s registiy information from its publicly available website. [See Ex. 2-8.] Thus, an Internet publication policy that gave sex offenders a meaningful opportunity to seek judicial intervention before publication would be extremely valuable in protecting the constitutional liberty and privacy interests of sex offenders.
The Commonwealth’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail does not outweigh the constitutional due process rights of sex offenders. SORB’s customary response to any challenge to its practices and policies, that it is merely trying to protect public safety, rings hollow in this case. This court does not question the public safety purpose of a fair and accurate sex offender registiy system. See e.g., Doe, No. 380316, 473 Mass, at 313 (“The state has a strong interest in protecting] children and other vulnerable people from recidivistic sex offenders”). But it is disingenuous for SORB to claim that its same-day Internet publication policy is needed to protect public safety. To say that the registration system for sex offenders serves an important public safety purpose is not the same as saying that same-day Internet publication serves an important public safety purpose. Providing a meaningful opportunity for sex offenders to seek judicial intervention prior to Internet publication of registiy information does not adversely affect public safety, any more than the number of days a hearing examiner takes from the close of a hearing to the issuance of the classification decision adversely affects public safety. If it did, SORB would have stringent policy requirements controlling the number of days a hearing examiner could keep a classification decision under advisement. As SORB admitted at the hearing, a day’s delay post-classification decision is no different as to its impact on public safety than a day’s delay pre-classification decision. If SORB permits hearing examiners to take whatever time deemed necessary to produce a written classification decision, it is disingenuous to suggest that eveiy day post-classification decision cannot be tolerated because of public safety concerns.
In any event, public safety concerns cannot trump required due process protections of sex offenders. If public safety concerns were paramount, the law in criminal proceedings would not include the exclusion-aiy rule or the fruit of the poisonous tree doctrine, where the protection of constitutional rights can require the suppression of highly relevant and inculpa-tory evidence, essentially letting the guilty go free in order to encourage law enforcement’s future adherence of the constitutional rights of all persons. See e.g., Commonwealth v. Hernandez, 456 Mass. 258, 532-33 (2010) (“application of the exclusionary rule is appropriate where it is ‘inherent in the purpose of a statute which the government has violated,’ and that such a puipose is inherent in ‘statutes closely associated with constitutional rights’ ”); Wong Sun v. United States, 371 U.S. 471, 486 (1963) (fruit of the poisonous tree doctrine determines the scope of the exclusionary rule).
*603 The court now turns to the question of what process is due Doe with respect to SORB’s Internet publication of his registry information. “A fundamental requisite of procedural due process” is notice and “the opportunity to be heard ‘at a meaningful time and in a meaningful manner.’ ” Paquette v. Commonwealth, 440 Mass. 121, 131 (2003), quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965). Because the concept of procedural due process is not static, but instead is “flexible and pragmatic,” Roe v. Attorney General, 434 Mass. 418, 427 (2001) (explaining that the requirements of procedural due process are “not rigid or hyper[ ]technical”), requiring that state action “be implemented in a fair manner,” Aime v. Commonwealth, 414 Mass. 667, 674 (1993); exactly what that entails “varies with context.” Spence v. Gormley, 387 Mass. 258, 274 (1982). See also Paquette, 440 Mass. at 131; Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895 (1951) (“The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation”); Mathews, 424 U.S. at 334 (“Due process is flexible and calls for such procedural protections as the particular situation demands”).
The court rules that due process requires SORB to provide a meaningful opportunity for sex offenders (level two and three), after actual notice of a final classification decision, to seek judicial intervention and a stay of Internet publication. One day’s notice, or part of one day’s notice (assuming e-mail or fax notice, which is not the predominant form of notification) , as SORB’s same-day publication policy now calls for, is not a meaningful opportunity and violates the due process rights of sex offenders. Meaningful opportunity must take into account actual notice to counsel for sex offenders (i.e. use of the mails), the possibility that counsel could be out of his/her office on a particular day, could be on trial, or engaged on behalf of other clients, and that all counsel cannot, with no advance notice, change their plans “on a dime” and attend immediately to the time intensive preparation of a Chapter 30A complaint and supporting papers for motion to stay Internet publication.
Meaningful means meaningful, and SORB acts at its peril if it thinks a narrow view of meaningful will comport with a court’s view of meaningful. SORB needs to understand that is not just a prosecuting agency. It is an adjudicative agency. It acts in a quasi-judicial role, with only deferential review by courts of its classifications decisions. It has a legal and moral obligation to use its immense power fairly and accurately, without bias toward sex offenders, and with due regard to the significant consequences of its classification decisions and the due process rights of sex offenders.
The appellate cases of this Commonwealth, and this court’s own memorandum decisions, suggest that SORB prefers to await judicial orders before self-policing even its obvious abuses of power. See e.g., Doe, No. 151564, 456 Mass. at 622 (age case); Doe, No. 205614, 466 Mass. at 608 (female sex offender case). This court could not have been clearer, more than six months ago, telling SORB that it should not prevent sex offenders from a meaningful opportunity to seek judicial intervention, particularly where the irreparable harm is so widely recognized. Yet SORB ignored this court’s directive and maintained a same-day publication policy that has no rational support, particularly given that most classification decisions are sent by mail, and not received until after the registry information is already published on SORB’s website. Moreover, SORB had three weeks from this court’s issuance of its stay and removal order in this case before the evidentiary hearing was held by the court to complete the record and address the constitutional issues raised by SORB’s same-day Internet publication policy. Despite the time for considered reflection, and with the involvement and representation of the Attorney General’s Office, the only change in policy that SORB self-executed was to bar issuance of classification decisions after 11:00 a.m. Apparently SORB agreed that afternoon notice of classification decisions, and its same-day publication policy, violated a sex offender’s due process rights. SORB’s apparent conclusion that same-day Internet publication for sex offenders notified by 11:00 a.m., whether by e-mail or mail, does not violate the due process rights of sex offenders is indefensible.[5] After the August 5, 2016 hearing before this court, where the court’s view of the illegality of SORB’s same-day publication policy was clearly stated and well understood by SORB, the fact that SORB continued to adhere to its same-day Internet publication policy suggests a lack of respect for the fair administration of justice.
An appropriate remedy in this case is problematic. Although SORB has removed Doe’s registry information from its website, Doe’s registry information remains on the Internet, on at least one private website, if not more. The court cannot re-establish the status quo from before the issuance of the classification decision and the same-day posting of Doe’s registry information to its website. However, the court will continue its removal and stay order until it issues a decision on Doe’s Chapter 30A appeal. It does so as a sanction, and not based on a meaningful consideration of the merits of Doe’s motion for a stay, which SORB, by its violation of Doe’s due process rights, prevented this court from considering at the only meaningful time: before Internet publication. It also seems appropriate that the court consider a grant of attorneys fees, whether as a sanction, a form of restitution, or under or by analogy to G.L.c. 231, §6F. Doe, who is privately represented, should not bear the financial expense of bringing an unlawful policy to an end. The court will hold a hearing to determine if SORB’s same-day publication policy, and its defense of that policy at the evidentiary hearing were wholly *604 insubstantial, frivolous, and not advanced in good faith. Whether the court has the power to assess counsel fees and/or impose a fine against a state agency such as SORB should be addressed by the parties if SORB questions that power. Counsel should confer and then consult with Ms. Patten about a date and time for the hearing.
ORDER
Doe’s motion for a preliminary injunction prohibiting internet publication of registry information is ALLOWED. SORB shall refrain from posting Doe’s registry information on its website and making Doe’s registry information available to the public, and shall otherwise treat Doe’s registry information as if Doe were classified as a level one sex offender, pending further order of the court. Anticipating a motion to unimpound under Trial Court Rule VII, Uniform Rules on Impoundment Procedure, Rule ll,[6] but acting on its own in the interests of justice, the court LIFTS the statutory directive for impoundment and this court’s earlier impound order in this case [D. 4] solely as they relate to the evidentiary hearing held by this court, all papers submitted by both parties in support of or in opposition to Doe’s motion for a preliminary injunction, and this memorandum of decision. The impound directive and order otherwise remain in place. The court’s hearing and decision, as well as all papers submitted in connection with the hearing, used a pseudonym for the sex offender and did not identify, directly or indirectly, Doe, victim(s) of any sex offenses, or any other persons who might be named in the court’s file. The public interest is served by the availability of this decision and the record on which it is based.

 Apparently, DePardo is not the only SORB employee who provides notice to counsel of classification decisions. Whether he is or is not, the representation that SORB always sends out immediate notice to counsel upon issuance of the classification decision is not correct. Counsel for a sex offender asserts in his affidavit [Ex. 20) that he received a classification decision on July 15, 2016, post-marked July 13, 2016. The decision was dated July 1, 2016. Counsel for a sex offender asserts in her affidavit that she requested and received e-mail notice of a classification decision. [Ex. 21.] She received notice and a copy of the decision on May 4, 2016. The decision was datedApril 29, 2016, and the client’s registry information was on the website at the time she received the decision. In another instance [Ex. 22], a sex offender received word of his classification level (two) from his probation officer several days before his counsel received a copy of the decision in the U.S. Mail. In another instance [Ex. 23] a decision dated May 18, 2016 was provided to counsel by mail, post-marked May 24, 2016.

 On all earlier occasions, DePardo used the U.S. mails to notify counsel of the issued classification decision. Obviously, in all of those instances, the sex offender’s registry information was already publicly on SORB’s website before the sex offender’s counsel received notice of the classification decision. Even if SORB’s same-day publication policy is lawful (which it is not) mailing classification decisions to counsel is a bad faith implementation of that policy, as it absolutely prevents a sex offender from seeking judicial intervention prior to the publication of his sex offender registry information on SORB’s website.

 Attorney Burke took no action to ensure that his office would be staffed through the end of the court day and that staff would be available to remove Doe’s registry information if so directed by the court. Doe’s counsel unsuccessfully tried to reach SORB’s legal office as she was leaving her office en route to the court with her Chapter 30A complaint and request for an emergency stay of Internet publication.

 That being said, Attorney Burke, being General Counsel and one of a limited number of SORB managers authorized to manually “refresh” SORB’s website during the workday, should have known that the manual “refresh” would immediately make available on the public website the registry information of any sex offender, like Doe, whose classification decision had been made final earlier in the day.

 Just several business days after SORB announced in open court its new 11:00 a.m. policy, a new case came before this court in which a sex offender’s counsel received at 1:15 p.m. notice of SORB’s classification decision, in blatant violation of SORB’s own newly announced policy. [ESCV2016-01230-D]. The offender’s registry information was posted later that same day. The court issued a short order of notice and required Attorney Burke to appear. During the hearing, Attorney Burke admitted that he well understood from the August 5, 2016 hearing that this court would declare SORB’s same-day publication policy unlawful. That knowledge should have been sufficient for SORB to self-police its own conduct and stay its same-day publication policy pending the formal issuance of this court’s decision in this case.

 Counsel for Doe has on several previous occasions moved to unimpound written decisions of this court. Over SORB’s opposition, this court has always allowed the motions to unimpound.