JAKE J., a juvenile *vs.* COMMONWEALTH.

Suffolk. October 2, 2000. - December 19, 2000.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Bail. Juvenile Court. Statute,* Construction.

A Juvenile Court judge had authority under G. L. c. 276, § 87, to impose pretrial probation with conditions on a juvenile with his consent for his release pending trial [73-77], and implicitly had inherent power to revoke the juvenile's bail for violation of the conditions [77-78].

A Juvenile Court judge properly, in the absence of any other statutory provision, looked to G. L. c. 276, § 58B, for the appropriate procedure and criteria for the revocation of a juvenile's bail for violation of the conditions of his release. [78-79]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on April 29, 1999.

The case was reserved and reported by *Fried,* J.

*Dana Alan Curhan* for the juvenile.

*Kimberly Diaz Peterson,* Assistant District Attorney, for the Commonwealth.

*Thomas F. Reilly,* Attorney General, *& Pamela L. Hunt,* Assistant Attorney General, for Juvenile Court Department, amicus curiae, submitted a brief.

IRELAND, J. The issues in this case arose when a Juvenile Court judge ordered a juvenile taken into custody for failing to obey school rules, but did not clarify whether her order resulted from the juvenile's violation of conditions of probation or violation of conditions of bail. This uncertainty ultimately resulted in the appeal before us.

In *Commonwealth* v. *Dodge,* 428 Mass. 860, 864-866 (1999), we stated that a judge did not have authority under the general bail statute, G. L. c. 276, § 58, to set conditions for releasing a defendant on personal recognizance or bail. We added that other provisions of c. 276, namely §§ 42A, 58A, and 87, give a judge authority to set conditions of release. *Id.* at 864 & nn.5, 6. In

particular, § 87 enables a judge, with the defendant's consent, to place the defendant on pretrial probation and then to set conditions, again with his consent, for release on personal recognizance or bail. *Id.*

We must decide whether a Juvenile Court judge presiding in a delinquency matter may release a juvenile on bail pursuant to § 58 and at the same time place him, with his consent, on pretrial probation under § 87, subject to specific, agreed-on conditions of release. Next we are asked whether the judge may subsequently revoke bail and place the juvenile in the custody of the Department of Youth Services (department) for his failure to abide by those conditions. Depending on our answer to these two questions, we are asked, finally, whether the judge may follow the procedure outlined in G. L. c. 276, § 58B, for revoking bail for violation of conditions set forth pursuant to § 58A, where the Legislature has not articulated the procedure for revoking bail when one of the conditions is violated.

We answer the first two questions in the affirmative. If the juvenile has consented to placement on pretrial supervised probation, with specific conditions, then the judge may surrender him and order him held in the custody of the department if he violates those conditions. We further conclude that the judge may do so by following the general criteria for revoking bail set forth in § 58B — even if that section does not apply specifically — where doing so would not prejudice the juvenile's rights in any way.

1. The juvenile, then eleven years old, had delinquency charges pending against him by reason of assault and battery and shoplifting. On February 1, 1999, when he was twelve years old, he was arraigned on a charge of unarmed robbery. On that date, a judge released him on $250 cash bail that his mother posted. The judge provided bail warnings pursuant to G. L. c. 276, § 58.

On that same day, the juvenile and his mother signed a form, signed and witnessed by a probation officer, that included the following "conditions of release:"

"1. You must obey local, state or federal laws or court order.

"2. You must report to your assigned probation officer at such time and place as he/she requires.

"3. You must notify the probation officer immediately of a change of residence or employment.

"4. You must not leave the Commonwealth without the express permission of the probation officer. . . ."

The conditions set forth above were preprinted on the form. Below them the following "special conditions of release" were handwritten:

"5. Cooperate with therapy

"6. Report to Probation weekly

"7. Submit to Court Clinic evaluation
    Curfew 5:00 p.m. — 7 days a week."

Immediately below the handwritten conditions appeared the following preprinted provision: "I have read and understand the above conditions of probation and agree to observe them. I acknowledge receipt of a copy of these conditions." Beneath these words, both the juvenile and his mother signed the form in the designated space.

The agreement was in effect from February 1, 1999, the date of arraignment, until March 8, 1999, the date scheduled for a pretrial conference. At the March 8 hearing, a probation officer reported that, in addition to other problems, the juvenile was behaving poorly in school and disobeying school rules. As a result, the judge added the following condition of release, which was then included by way of amendment to the February 1, 1999, "Conditions of Release" form: "3/8/99 Attend school daily on time and obey all rules." The juvenile signed next to the added condition. He again received the standard bail warnings, and his case was continued until April 12, 1999.[1]

At the April 12 hearing, a probation officer reported that, based on several disciplinary reports from the juvenile's school,

---

[1]The judge stated, "[I]f this young man gets arrested again and if he comes before me, he's going to get locked up for 60 days under these conditions." The juvenile was advised by the judge as follows: "In addition to other conditions for your custody, the Court wishes to inform you under the terms of Chapter 276, Section 58, should you be arrested for any new offense throughout the pendency of this trial, you may be held without bail for a period of up to 60 days. Do you understand?" The juvenile answered, "Yes."

he had been disruptive in school and had continued to violate school rules. In response to these reports, the Commonwealth moved to revoke bail.

On April 26, 1999, the juvenile appeared with counsel for a hearing on the motion. The judge stated that she would treat the proceedings as a straight bail revocation hearing pursuant to G. L. c. 276, § 58B, and, as such, admitted hearsay, i.e., the school reports, in evidence. Based on the reports, the judge found that the juvenile had violated the last condition, that is the one added on March 8, 1999. The judge revoked bail, placed the juvenile in the custody of the department, and continued the matter until May 10, 1999. The juvenile filed a petition for relief under G. L. c. 211, § 3, arguing that the judge lacked authority under G. L. c. 276, § 58, to set conditions of bail and, thus, lacked authority to revoke bail for the alleged violation of the conditions. After a hearing on May 5, 1999, the single justice reserved and reported the case with decision to the full court.[2]

2. The record indicates that, after posting bail, the juvenile was released at his arraignment and was placed on supervised pretrial probation subject to terms that included the specific conditions of his release on bail. Those conditions were subsequently amended to include the one for violation of which his bail was revoked, i.e., that he obey school rules.

On appeal, the juvenile insists that he was never placed on pretrial probation, that the conditions to which he had agreed were not conditions of probation but rather conditions of release, and that the single reason for which his bail could be revoked was, as specified in the third sentence of G. L. c. 276, § 58, being "charged with a crime during the period of his release." Implausibly, the juvenile goes on to contend that, because he

[2]Since the petition under G. L. c. 211, § 3, was filed, the matter has become moot. On July 9, 1999, the juvenile entered a plea of delinquent by reason of the unarmed robbery charge. He was placed on probation with a suspended commitment to the department. Subsequently, he violated probation, the suspended sentence was revoked, and he was committed to the department. Accordingly, any decision we might reach in this case would have no effect on the juvenile's status. We shall decide the issues nevertheless: they have been fully briefed and argued; they are likely to arise again in similar circumstances, but likely would again become moot before appellate review could be obtained; and they are of public importance. See *Commonwealth* v. *Taylor*, 428 Mass. 623, 624 (1999), and cases cited. Moreover, this case raises serious questions concerning the use of probation under § 87 after *Commonwealth* v. *Dodge*, 428 Mass. 860 (1999).

was never placed on probation, any conditions of his release that were listed on the signed probation agreement could not have arisen under G. L. c. 276, § 87, but, rather, arose only under G. L. c. 276, § 58. Because we stated in *Commonwealth v. Dodge*, 428 Mass. 860 (1999), that conditions for release such as these may not be set under § 58, the conditions, according to the juvenile, were of no effect whatsoever.

Section 87[3] allows the court to place a criminal defendant or juvenile "on probation in the care of [a] probation officer . . . for such time and upon such conditions as it deems proper, with the defendant's consent, before trial and before a plea of guilty." G. L. c. 276, § 87. This section authorizes the court to place a juvenile on pretrial, predisposition probation subject to conditions with the juvenile's consent. It also allows the court to place a juvenile on probation "after a finding or verdict of guilty." See *Commonwealth v. Norrell*, 423 Mass. 725, 728 (1996). The juvenile suggests that, despite its provisions, this section was intended primarily as a dispositional device (i.e., to dispose of a case after a determination of guilt or delinquency, or to dispose of a case through continuance on pretrial probation followed by dismissal); not, as it appears to have been used in his case, as a means of supervising him in the community pending a trial or entry of a plea on the pending charges.

However, neither the text nor history of § 87 suggests that the statute was used inappropriately in this case. The Legislature "has expressly authorized the imposition of pretrial conditions for a defendant's release on bail or personal recognizance under G. L. c. 276, [§] 87." *Commonwealth v. Dodge, supra* at 864. Section 87 gives the court "authority to impose conditions on pretrial release when [the] defendant consents and is placed on probation." *Id.* Cf. *Commonwealth v. Taylor*, 428 Mass. 623, 626 (1999) (§ 87 may be authority for pretrial probation with conditions, coupled with supervision of defendant by probation officer); *Commonwealth v. Norrell, supra* at 728 & n.6 (§ 87 provides for pretrial probation in conjunction with pretrial

---

[3]General Laws c. 276, § 87, provides in relevant part: "The superior court, any district court and any juvenile court may place on probation in the care of its probation officer any person before it charged with an offense or a crime for such time and upon such conditions as it deems proper, with the defendant's consent, before trial and before a plea of guilty, or in any case after a finding or verdict of guilty. . . ." (The statute goes on from here to exclude certain defendants who have been convicted of certain enumerated crimes from being released on pretrial probation.)

continuance under G. L. c. 278, § 18); *Commonwealth* v. *Pyles*, 423 Mass. 717, 723 (1996) (§ 87 provides for pretrial probation). Thus, the Juvenile Court judge had authority to place the juvenile on pretrial probation with conditions for his release on bail.

The juvenile and his mother were made aware of this arrangement, and that violation of the enumerated conditions would result in the revocation of bail and holding the child in custody. At the March 8 hearing, the judge warned counsel that the juvenile would be "locked up . . . under these conditions" governing his continued custody with his mother. See note 1, *supra*. Furthermore, the juvenile reasonably should have known that he was being placed on pretrial probation pursuant to § 87. Both he and his mother signed an agreement with the probation department that provided for, among other conditions, weekly reports to a supervising probation officer. The agreement includes several references to his being on probation, and his signature appears above the designation "probationer."[4] Consistent with the requirements of our interpretation of § 87, the pretrial probation agreement was entered into voluntarily, see *Commonwealth* v. *Dodge, supra* at 864, and included an "enforcement mechanism," as evidenced by the mandatory weekly reporting to a probation officer. See *Commonwealth* v. *Taylor, supra* at 626.

This attempt to assist and to supervise the juvenile on bail while he remained within the community and in the custody of his mother was consistent with the Juvenile Court's over-all mission to further the best interests of children who appear before the court on delinquency matters and, whenever possible, to offer a course of rehabilitation rather than punishment. See generally *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 665-668 (1978) (discussing role of Juvenile Court). In fact, the Legislature has provided through G. L. c. 119, § 53, that the "care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they would receive from their

---

[4]We do not think that the several revisions to the form agreement, changing the phrase "conditions of probation" to "conditions of release," affect the conclusion that the juvenile was placed on pretrial probation and should have been aware of that fact. The reference to "release," as well as to "probation," merely clarified that this probation was pretrial, not a disposition of the charge.

parents, and that, as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance."

That plainly was the judge's intention here. The juvenile was offered, and agreed to cooperate with, services that included therapy and an evaluation by the court clinic. In addition, the mother's supervisory rule was to be assisted or reinforced by probationary supervision, a court imposed daily curfew, and a requirement that the juvenile attend school and obey school rules. Moreover, by agreeing to these conditions, the juvenile implicitly consented to the consequences, i.e., revocation of bail, if such conditions were violated. We think it would be anomalous if the policies enunciated in § 53 and discussed in *Police Comm'r of Boston* could guide the court in disposing of delinquency matters but could not guide the court in deciding whether, and what type of, conditions should be placed on a child who first appeared before the court on a delinquency charge. The judge here attempted to maintain the juvenile at home and in the community rather than order him confined to a restricted setting with the department pending trial. If, as the juvenile suggests, the court lacks authority to set and enforce conditions for releasing troubled juveniles into the community while awaiting trial, then the court would have little recourse in many instances but to order those juveniles held by the department. We do not believe that is a wise course or one contemplated by the Legislature when it enacted G. L. c. 119, § 53. Accordingly, the Juvenile Court judge had authority, with the juvenile's consent, to set probationary conditions for the juvenile's release.

In future proceedings such as these, where the Juvenile Court intends to set conditions of release, we emphasize the need to be clear on the record that the juvenile is being released on bail or personal recognizance pursuant to G. L. c. 276, § 58, and that, with his consent and agreement, he is simultaneously being placed on probation pursuant to § 87. Further, it should be explained to the juvenile that any agreed-on conditions of probation also constitute the conditions of his release. If there is a voluntary agreement with conditions for release, it usually will include an element of probationary supervision. Finally, the judge should explain the consequences of violating any of the agreed-on conditions. We stress that these requirements are matters of substance, not merely of form. Placing a juvenile on

conditions of release under § 87 should be more than "[a]rtful nomenclature," *Commonwealth* v. *Taylor, supra* at 626, or the reference to one statute rather than another.

3. With some persuasive force, the juvenile argues that, even if he was lawfully placed on pretrial probation with conditions for release pursuant to § 87, that section provides no mechanism or procedure for bail revocation if the conditions are violated. The juvenile further contends that § 58B, which the judge relied on in revoking bail, does not apply here. That section, according to the juvenile, gives the court authority to revoke bail only where conditions of release are violated by a juvenile who has been released pursuant to a G. L. c. 276, § 58A, determination of dangerousness. Because the juvenile was not released under § 58A, he insists bail cannot be revoked under § 58B.[5]

Section 87 provides no explicit enforcement mechanism. Neither, for that matter, does G. L. c. 276, § 42A (regarding release in domestic abuse cases), which, along with §§ 87 and 58A, is the other provision mentioned in *Commonwealth* v. *Dodge, supra* at 864, under which the court may set conditions of release. The lack of any established procedure within either of those statutes should not, however, render the court impotent. The court has inherent authority to exercise its own legitimate powers. This principle is essential to the effective functioning of the judiciary. See *Brach* v. *Chief Justice of Dist. Court Dep't,* 386 Mass. 528, 535-536 (1982), quoting *Sheriff of Middlesex County* v. *Commissioner of Correction,* 383 Mass. 631, 636 (1981). See *Gray* v. *Commissioner of Revenue,* 422 Mass. 666, 672 (1996) (ordering child support for children of unmarried parents); *Commonwealth* v. *O'Neil,* 418 Mass. 760, 763-764 (1994) (court has inherent power to exercise "physical control" over court room). Cf. *Commonwealth* v. *Florence F.,* 429 Mass. 523, 525 n.4 (1999) ("contempt is an inherent power of the court"). Here, the special concerns of the Juvenile Court system make the need to exercise these inherent powers particularly acute. See *supra* at 75-76.

In §§ 42A and 87, the Legislature expressly authorized the court to set conditions of release. The Legislature would not rationally confer on the court such authority and, at the same

---

[5]General Laws c. 276, § 58A, inserted in 1994, allows the court to set conditions of release based on a defendant's dangerousness. Section 58B allows the court to revoke the defendant's release for violating such conditions and provides guidelines for doing so.

time, withhold the authority to enforce those conditions or sanction their violation. In short, the Legislature would not grant courts the authority to issue orders or set conditions that could not be enforced. Inherent within its own constitutionally granted power, and implicit within its legislatively granted power under § 87, the court has the power to revoke a juvenile's bail for his violation of the conditions.[6]

4. Finally, we address the matter whether the juvenile's bail was properly revoked pursuant to § 58B or whether some other provision or procedure should have been used.[7] Strictly speaking, the application of § 58B is limited to conditions imposed under a dangerousness hearing pursuant to § 58A. Sections 87 and 42A, in contrast to § 58A, are silent as to how the court is to enforce its conditions — an apparent oversight that the Legislature may wish to address in the future. Because §§ 87 and 42A predate §§ 58A and 58B by a number of years, we cannot reasonably presume some unspoken intent or implication on the Legislature's part that the provisions of § 58B were meant somehow to govern bail revocations for violating conditions under §§ 87 or 42A.[8]

Having said that, we recognize that, in the absence of any other relevant provision, the judge could seek guidance from § 58B regarding the procedure for conducting the revocation hearing and the criteria she should apply. The question before her was not whether she had authority to revoke bail; she had inherent authority to do so. See *Brach* v. *Chief Justice of the Dist. Court Dep't, supra* at 536 (inherent power may arise in situations not covered by established methods). Rather, the issue was simply how to revoke bail, i.e., what process or procedure to use. Section 58B, by analogy, contains factors that

[6]As the amicus brief points out, the Juvenile Court judge can respond to a juvenile's failure to comply with pretrial conditions of release in various ways. In addition to the revocation of bail discussed here, the judge may accelerate the trial date, advance the hearing of any other court proceedings, or issue an adjudication of contempt.

[7]The juvenile argues generally that the court lacked the authority to set or enforce the conditions and specifically that § 58B could not possibly apply here. As such, he suggests that the court must hold him in contempt after a hearing or conduct a probation surrender hearing rather than "summarily revoke [his] bail [under § 58B]."

[8]Compare G. L. c. 276, § 42A, inserted by St. 1978, c. 447, § 5, and G. L. c. 276, § 87, as appearing in St. 1974, c. 614, with G. L. c. 276, §§ 58A, 58B, inserted by St. 1994, c. 68, § 6.

were especially relevant to the juvenile's case. Clear and convincing evidence that he had violated a condition of release was required. See G. L. c. 276, § 58B. In addition, the judge must conclude that the juvenile was "unlikely to abide by any [other] condition or combination of conditions of release." *Id.* The requirements of § 58B for revoking bail appear no less rigorous than any other requirement that may have obtained in a bail revocation for reasons other than "dangerousness" under § 58A. Cf. *Delaney* v. *Commonwealth*, 415 Mass. 490, 492-494 & n.5 (1993) (§ 58 factors). Here, the juvenile received a hearing and was represented by counsel. The resulting record indicates that sufficient evidence was presented to warrant the judge's finding that the condition regarding school behavior had been violated. Moreover, the juvenile has not shown that he was prejudiced in any way by the judge's use of § 58B in revoking his bail, given her inherent authority to do so. For this reason, we reject any contention by the juvenile that, owing to the lack of an explicit statutory provision governing the revocation process here, the judge was relegated to the use of the process of contempt of court, revocation of probation, or modification of the bail order. Given the uncertainty surrounding the revocation process, the Legislature may wish to consider adopting a procedure for § 87 proceedings that adequately balances the interests of accused juveniles and the judges who administer their cases.

The case is remanded to the county court for entry of a judgment affirming the Juvenile Court judge's order revoking bail.

*So ordered.*