NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12706

COMMONWEALTH  vs.  PRESTON P., a juvenile.


Middlesex.     September 5, 2019. - January 7, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Delinquent Child.  Practice, Criminal, Juvenile delinquency
    proceeding, Probation, Revocation of probation.  Juvenile
    Court, Delinquent child, Probation.



    Complaint received and sworn to in the Middlesex County
Division of the Juvenile Court Department on December 19, 2016.

    A proceeding for revocation of probation was heard by Jay
D. Blitzman, J., a motion for reconsideration was also heard by
him, and questions of law were reported by him to the Appeals
Court.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Benjamin L. Falkner for the juvenile.
    Timothy Ferriter, Assistant District Attorney, for the
Commonwealth.
    Nina L. Pomponio for the probation service.
    Michelle Menken, for youth advocacy division of the
Committee for Public Counsel Services & another, amici curiae,
submitted a brief.

GAZIANO, J.  A Juvenile Court judge may place a juvenile on pretrial probation with the consent of the juvenile and the Commonwealth.  See Commonwealth v. Tim T., 437 Mass. 592, 596-597 (2002).  As part of pretrial probation, the juvenile agrees to abide by certain conditions for a specified period of time.  See id.  In exchange, the case is removed from the trial calendar.  See id. at 596.  If the juvenile successfully completes the probationary period, the charges are dismissed.  See id. at 597.  This practice is distinct from pretrial conditions of release, which may be supervised by the probation service, but do not lead to dismissal or removal from the trial calendar.  See Jake J. v. Commonwealth, 433 Mass. 70, 71, 74-75 (2000); G. L. c. 276, § 87.  In this case, we are asked to determine the standard of proof and procedural requirements necessary for the revocation of pretrial probation in the Juvenile Court.

We conclude that, for a revocation based on a new criminal offense, the Commonwealth must prove that there is probable cause to believe that the juvenile committed the offense.  Probable cause may be established at a nonevidentiary hearing based on the application for a complaint.  For a revocation based on any violation other than a new criminal offense, the Commonwealth must prove by a preponderance of the evidence, at an evidentiary hearing, that the juvenile violated the

condition. For any revocation of a juvenile's pretrial probation, due process requires written notice of the claimed violation, the opportunity to be heard, and a judicial finding that the juvenile committed the violation. The other evidentiary principles that govern postdisposition probation revocation hearings, see Commonwealth v. Durling, 407 Mass. 108, 113, 118 (1990), do not apply.[1]

Background. The juvenile was charged with assault and battery by means of a dangerous weapon for allegedly "whipping" a remote control at another juvenile. With the consent of the juvenile and the Commonwealth, a Juvenile Court judge subsequently placed the juvenile on pretrial probation in anticipation of the case being dismissed after a specified probationary period.[2] The pretrial probation agreement included the condition that the juvenile obey all local, State, and Federal laws. Before the probationary period ended, the probation service served the juvenile with a notice of pretrial

---

[1] We acknowledge the amicus brief submitted by the youth advocacy division of the Committee for Public Counsel Services and the Massachusetts Association of Criminal Defense Lawyers.

[2] The juvenile was placed on pretrial probation twice during the duration of the proceedings in this case. The Juvenile Court judge terminated his pretrial probation once, and subsequently placed the juvenile on pretrial probation for a second time. The alleged violation in this appeal occurred during the second period of pretrial probation.

probation violation alleging new charges for tagging and defacing property.[3]  At a hearing on the Commonwealth's motion to revoke pretrial probation, the judge found probable cause that the juvenile had committed the offense of tagging.  Based on this finding, the judge revoked the juvenile's pretrial probation and put the case back on the trial calendar.

The juvenile filed a motion to reconsider the revocation; he argued that the judge's application of the probable cause standard violated the juvenile's due process rights.  The juvenile maintained that a violation must be proved by a preponderance of the evidence, and that the hearing must comply with the evidentiary requirements of Durling, 407 Mass. at 113, 118.  The judge heard argument on these questions of law in a series of nonevidentiary hearings.  He then allowed the motion to reconsider, set a date for a revocation hearing, and stayed the matter pending the resolution of three questions that he reported to the Appeals Court.  We transferred the case to this court on our own motion.

Discussion.  The judge reported the following questions:

"1.  Where a juvenile has been placed on pretrial probation under [G. L. c. 276, § 87,] and Commonwealth v. Tim T., 437 Mass. 592 (2002)[,] in contemplation of the Commonwealth's dismissal of the case upon the juvenile's successful completion, does [G. L. c. 276, § 58B,] govern the

---

[3] The notice of violation also contained an asserted noncriminal violation.  The judge did not make findings on this additional violation, and it is not at issue before us.

revocation of said pretrial probation?

"2. Where the Commonwealth seeks revocation of pretrial probation in contemplation of dismissal, pursuant to [G. L. c. 276, § 87,] and Commonwealth v. Tim T., 437 Mass. 592 (2002), must a violation of any condition be proven by a preponderance of the evidence?

"3. Do the evidentiary principles in Commonwealth v. Durling, [407] Mass. 108, 111 (1990)[,] apply to such a hearing?"

See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004).

We answer the first question, "No." Based on the incongruence between the language of G. L. c. 276, § 58B, and pretrial probation, we conclude that the statute does not govern the revocation of a juvenile's pretrial probation. We answer the second question, "No," in part. For a violation based on a new criminal offense, a judicial finding of probable cause satisfies the requirements of due process. For a violation of any other condition, however, due process requires proof by a preponderance of the evidence. We also answer the third question, "No," in part. For revocation of a juvenile's pretrial probation, due process necessitates notice of the alleged violation, the opportunity to be heard, and a judicial finding that the violation occurred. Violations based on new criminal offenses may be established at a nonevidentiary hearing based on the application for a complaint, while other violations require an evidentiary hearing. The additional evidentiary principles from Durling, 407 Mass. at 113, 118, are not

requisites in the context of pretrial probation.

1. Terminology. A Juvenile Court judge may place a juvenile on pretrial probation based on the statutory authorization of G. L. c. 276, § 87.[4] See Tim T., 437 Mass. at 596-597. General Laws c. 276, § 87, also establishes statutory authorization for pretrial conditions of release, Jake J., 433 Mass. at 71, which are distinct from pretrial probation. Notwithstanding this distinction, our jurisprudence at times has used the term "pretrial probation" in discussing pretrial conditions of release. See id. at 75 ("Juvenile Court judge had authority to place the juvenile on pretrial probation with conditions for his release on bail"). We take this opportunity to delineate the differences between the two.[5]

a. Pretrial probation. With the consent of the juvenile

_____

[4] General Laws c. 276, § 87, states, in relevant part,

"The . . . [J]uvenile [C]ourt may place on probation in the care of its probation officer any [juvenile] before it charged with an offense or a crime for such time and upon such conditions as it deems proper, with the [juvenile's] consent, before trial and before a plea of guilty . . . ."

[5] These two practices also are distinct from pretrial diversion, see G. L. c. 119, § 54A; drug rehabilitation diversion, see G. L. c. 111E, § 10; and continuances without a finding, see G. L. c. 278, § 18. Nothing in this opinion should be taken to govern statutory diversion programs or continuances without a finding. Nor should this opinion be taken to govern any agreements to dismiss cases, made by the Commonwealth and a juvenile with the approval of a judge, that do not involve probation.

and the Commonwealth, a judge may place a juvenile on pretrial probation pursuant to G. L. c. 276, § 87. See Tim T., 437 Mass. at 597. A pretrial probation agreement specifies conditions with which the juvenile must comply for a specified period of time. See id. at 596-597. When a juvenile is placed on pretrial probation, the case is removed from the trial calendar. See id. at 596. If the juvenile successfully completes the probationary period, the charges are dismissed. See id. at 597. A judge may not order a juvenile detained based on a violation of pretrial probation, because "the only recourse [is] to return the case to the trial calendar." See Commonwealth v. Rodriguez, 441 Mass. 1002, 1003 (2004), quoting Tim T., supra at 596. General Laws c. 276, § 87, does not provide a procedure for the revocation of pretrial probation. As we discuss, neither does any other statute.

b. Pretrial conditions of release. General Laws c. 276, § 87, also allows for a distinct type of supervision known as pretrial conditions of release. See Jake J., 433 Mass. at 71. The confusion between pretrial probation and pretrial conditions of release is understandable. Both occur prior to trial, and both involve supervision by the probation service. Nonetheless, they are distinct procedures that serve different functions.

As with pretrial probation, a defendant must consent to the conditions of pretrial release, but by contrast to pretrial

probation, the Commonwealth's consent is not required. Compare Jake J., 433 Mass. at 71, with Tim T., 437 Mass. at 594, 597. Unlike pretrial probation, pretrial conditions of release do not remove the case from the trial calendar or lead to a future dismissal. Compare Tim T., supra at 596-597, with Jake J., supra. Further, and distinct from a violation of a condition of pretrial probation, a violation of pretrial conditions of release may lead to detention. Compare Tim T., supra at 596, with G. L. c. 276, § 58B (authorizing detention of up to ninety days). Finally, the adjudication of violations of pretrial conditions of release, but not pretrial probation, is governed by statute. See G. L. c. 276, § 58B, and discussion, infra.

While the terms at times have been used interchangeably in earlier jurisprudence, for clarity, we will not use the term "pretrial probation" to refer to pretrial conditions of release.

A Juvenile Court judge also may impose pretrial conditions of release without supervision by the probation service. See G. L. c. 276, § 58. Although we held in Commonwealth v. Dodge, 428 Mass. 860, 863-866 (1999), that judges did not have statutory or inherent authority to impose conditions of release under G. L. c. 276, § 58, the Legislature amended the statute in 2006 and 2014, thereby allowing for the imposition of certain conditions of release. See G. L. c. 276, § 58, as amended through St. 2006, c. 48, § 8 (juvenile "may be ordered to abide

by specified restrictions on personal associations or conduct including, but not limited to, avoiding all contact with an alleged victim of the crime and any potential witness or witnesses who may testify concerning the offense, as a condition of release"); G. L. c. 276, § 58, as amended through St. 2014, c. 260, § 32 (allowing in cases involving domestic violence or abuse for "conditions on a person's release in order to ensure the appearance of the person before the court and the safety of the alleged victim, any other individual or the community"). Here, our discussion of conditions of release refers only to conditions imposed which include supervision by the probation service, pursuant to G. L. c. 276, § 87, and not those imposed without supervision by the probation service, pursuant to G. L. c. 276, § 58.

2. <u>Statutory landscape</u>. a. <u>Whether G. L. c. 276, § 58B, governs revocation of pretrial probation</u>. Pretrial probation and pretrial conditions of release are both authorized by G. L. c. 276, § 87, but the statute does not contain procedures for addressing violations of either. General Laws c. 276, § 58B, provides, in part,

> "A person who has been released after a hearing pursuant to [§§] 42A, 58, 58A or 87 and who has violated a condition of his release, shall be subject to a revocation of release and an order of detention. The judicial officer shall enter an order of revocation and detention if after a hearing the judicial officer finds (1) that there is probable cause to believe that the person has committed a

> [F]ederal or [S]tate crime while on release, or clear and convincing evidence that the person has violated any other condition of release; and (2) the judicial officer finds that there are no conditions of release that will reasonably assure the person will not pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release."

The statutory language thus makes clear that G. L. c. 276, § 58B, governs violations of pretrial conditions of release. Three incongruences between pretrial probation and the language of G. L. c. 276, § 58B, however, lead us to conclude that, in referencing G. L. c. 276, § 87, the Legislature intended to encompass solely pretrial conditions of release, and not pretrial probation.

First, G. L. c. 276, § 58B, applies only when a juvenile "has been released after a hearing." Pretrial probation, on the other hand, is not a mechanism by which a juvenile is released from confinement. Rather, pretrial probation is a court-enforced agreement regarding probation conditions and an anticipated future dismissal that is distinct from any terms of release. See Tim T., 437 Mass. at 597. For example, a juvenile might be released on personal recognizance at arraignment, and months later, a judge could impose pretrial probation. In that situation, pretrial probation clearly is not the method by which the individual is released.

Second, a juvenile who is found in violation of conditions

of release pursuant to G. L. c. 276, § 58B, "shall be subject to a revocation of release and an order of detention." The only recourse for a violation of pretrial probation, by contrast, is a return to the trial calendar, not detention. See Rodriguez, 441 Mass. at 1003, citing Tim T., 437 Mass. at 596.

Third, revocations under G. L. c. 276, § 58B, require a judge to find that "there are no conditions of release that will reasonably assure the person will not pose a danger to the safety of any other person or the community . . . [or that] the person is unlikely to abide by any condition or combination of conditions of release." Such findings are not relevant in the context of a revocation of pretrial probation. If the Commonwealth moves to revoke pretrial probation, and the judge finds that the juvenile has violated the conditions of pretrial probation, the judge must revoke. See Tim T., 437 Mass. at 596-597. No finding of dangerousness or future unlikeliness to abide by conditions of release is necessary. See id.

Taken together, these three incongruences demonstrate that G. L. c. 276, § 58B, does not govern the revocation of pretrial probation.

b. Statutory guidance. Because the Legislature has not prescribed a method in G. L. c. 276, § 87, for the revocation of pretrial probation, we look to other statutes for guidance. In Jake J., 433 Mass. at 77-79, we held that courts could look to

statutes that were "especially relevant" when filling in a similar statutory gap.[6]  Here, we conclude that G. L. c. 119, § 54A, the juvenile pretrial diversion statute, is particularly relevant and therefore can provide needed guidance.

Pretrial diversion is particularly relevant because it is so similar to pretrial probation.  Both pretrial diversion and pretrial probation involve a stay or continuance of the

---

[6] At the time of Jake J. v. Commonwealth, 433 Mass. 70, 71, 77-79 (2000), the Legislature had allowed courts to set pretrial conditions of release, but had not provided an enforcement mechanism to handle violations of those conditions.  We concluded that courts could look to G. L. c. 276, § 58B, for procedures to use in addressing violations of pretrial conditions.  Subsequent to our decision in Jake J., supra, the Legislature amended G. L. c. 276, § 58B, to apply to violations of pretrial conditions of release that were imposed pursuant to G. L. c. 276, § 87.  See G. L. c. 276, § 58B, as amended through St. 2014, c. 260, § 39.

In Jake J., 433 Mass. at 77-78, we also observed that it would be irrational for the Legislature to give courts the authority to set pretrial conditions of release without also providing the authority "to enforce those conditions or sanction their violation."  Therefore, we concluded that courts had inherent authority to revoke a juvenile's bail for violations of pretrial conditions of release.  See id.  See also Brach v. Chief Justice of the Dist. Court Dep't, 386 Mass. 528, 535 (1982), quoting Sheriff of Middlesex County v. Commissioner of Correction, 383 Mass. 631, 636 (1981) (courts may exercise their inherent power when it is "essential to the function of the judicial department, to the maintenance of its authority, or to its capacity to decide cases").  The same rationale applies with respect to pretrial probation.  Through G. L. c. 276, § 87, the Legislature allowed pretrial probation without creating a method for its revocation.  Just as with pretrial conditions of release, because G. L. c. 276, § 87, allows for pretrial probation, courts have inherent authority to revoke pretrial probation despite the absence of an explicit statutory authorization.

proceedings. See G. L. c. 119, § 54A (c) (1) ("proceedings . . . shall be stayed for [ninety] days"); Tim T., 437 Mass. at 597 ("judge may . . . continue the case for a probationary period"). Both involve supervision by the probation service. See G. L. c. 119, § 54A (f) (1) ("probation officer or the program director shall . . . [indicate] successful completion of diversion . . . [or recommend] extension"); Tim T., supra ("judge may place a defendant on pretrial probation"). Both lead to the dismissal of the case upon successful completion. See G. L. c. 119, § 54A (f) (2); Tim T., supra. In both types of proceedings, the only recourse for a violation is to return the case to the trial calendar. See G. L. c. 119, § 54A (e); Rodriguez, 441 Mass. at 1003, quoting Tim T., supra at 596.

The pretrial diversion statute identifies probable cause as the standard of proof for violations based on new criminal offenses. See G. L. c. 119, § 54A (e). Therefore, we conclude that the standard of probable cause should apply to revocations of pretrial probation based on new criminal offenses. As discussed infra, this standard complies with the mandates of due process. General Laws c. 119, § 54A, however, does not contain a standard of proof for noncriminal violations. Without statutory guidance on this point, we turn to principles of due process to determine the required standard of proof for such

violations.

3. Procedural due process. The doctrine of procedural due process mandates that deprivations of life, liberty, or property be "implemented in a fair manner." Brangan v. Commonwealth, 477 Mass. 691, 703 (2017), citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976).[7] Due process "is a flexible concept . . . [that] depend[s] on the circumstances of each case." Durling, 407 Mass. at 113-114. To determine the constitutionality of the procedures at issue, we apply the test discussed in Mathews, supra at 334-335, which balances "the private interests affected, the risk of erroneous deprivation, the probable value of additional or substitute safeguards, and the governmental interests involved" (citation omitted). See Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 202 (2018) (Noe).

In Durling, 407 Mass. at 113, we concluded that the due process clause of the Fourteenth Amendment to the United States Constitution required the following procedural protections at probation revocation hearings:

"(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of the evidence against him; (c) opportunity to be heard in

_____

[7] As the parties do not make any argument regarding substantive due process, see generally Paquette v. Commonwealth, 440 Mass. 121, 124-125 (2003), cert. denied, 540 U.S. 1150 (2004) (discussing substantive due process), we do not reach the issue.

> person and to present witnesses and documentary evidence;
> (d) the right to confront and cross-examine adverse
> witnesses (unless the hearing officer specifically finds
> good cause for not allowing confrontation); (e) a neutral
> and detached hearing body such as a traditional parole
> board, members of which need not be judicial officers or
> lawyers; and (f) a written statement by the factfinders as
> to the evidence relied on and reasons for revoking
> [probation or] parole."

Id., quoting Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973).  We

observed that "[u]nsubstantiated and unreliable hearsay

cannot . . . be the entire basis of a probation revocation."

Durling, supra at 118.  Subsequent to our decision in Durling,

supra, we further determined that probation violations must be

proved by a preponderance of the evidence.  See Commonwealth v.

Holmgren, 421 Mass. 224, 226 (1995), citing Commonwealth v.

Maggio, 414 Mass. 193, 198 (1993).

     With these standards in mind, we undertake the analysis set

forth in Mathews to determine whether these requirements also

should apply to pretrial probation revocation hearings.  See

Mathews, 424 U.S. at 334-335.  The threshold inquiry under

Mathews is whether the revocation of pretrial probation

constitutes a deprivation of life, liberty, or property.  See

id. at 332; Aime v. Commonwealth, 414 Mass. 667, 674-675 (1993).

Here, when the Commonwealth promised to dismiss the case upon

successful completion of pretrial probation, the juvenile gained

an interest in maintaining the benefit of that agreement.  Cf.

Perry v. Sindermann, 408 U.S. 593, 601 (1972) ("mutually

explicit understandings" can create due process interests that did not exist previously). If that benefit is revoked, the juvenile is re-exposed to a delinquency prosecution, which can result in incarceration. See G. L. c. 119, § 58. Therefore, a liberty interest is at stake, and we must balance the factors set forth in Mathews, supra, to determine the process that is due. See Querubin v. Commonwealth, 440 Mass. 108, 112 (2003), citing Commonwealth v. Bruno, 432 Mass. 489, 503 (2000) ("Freedom from physical restraint is a fundamental right").

a. Private interests. A juvenile clearly has a substantial interest in avoiding incarceration. See In re Gault, 387 U.S. 1, 36 (1967) (noting severity of incarceration in juvenile detention home); Querubin, 440 Mass. at 112. Although revocation does not lead directly to incarceration, placing the case back on the trial calendar allows for the possibility of a delinquency finding and commitment to a locked facility of the Department of Youth Services. See G. L. c. 119, § 58 (outlining sentencing tools available in Juvenile Court).

Even if the juvenile were never incarcerated, a delinquency proceeding exposes the child to the "stigma of being perceived to be a criminal." See Commonwealth v. Newton N., 478 Mass. 747, 755 (2018), quoting Commonwealth v. Humberto H., 466 Mass. 562, 576 (2013); Commonwealth v. Hanson H., 464 Mass. 807, 816 (2013) ("avoidance of attaching the stigma of a criminal to the

child is of great importance" [citation omitted]); Commonwealth v. Magnus M., 461 Mass. 459, 467 (2012) (noting "stigma and collateral consequences of a delinquency adjudication").

A delinquency complaint, with or without a finding of delinquency, also can have harmful collateral consequences for a juvenile. Once a delinquency case is arraigned, "the juvenile's name and delinquency charge become part of the juvenile's permanent [court activity record information (CARI)]." Newton N., 478 Mass. at 755, quoting Humberto H., 466 Mass. at 572. A CARI record is "accessible to the justices and probation officers of the courts, to the police commissioner for the city of Boston, to all chiefs of police and city marshals, and to such departments of the [S]tate and local governments as the commissioner [of probation] may determine." Humberto H., supra at 572-573, quoting G. L. c. 276, § 100. Even a sealed record "may . . . be made available to a judge 'for the purpose of consideration in imposing sentence.'" Humberto H., supra at 573, quoting G. L. c. 276, § 100B.[8] "'[P]rior records or lack

---

[8] Additionally, juvenile arrest and adjudication records can be accessed by the Department of Children and Families, G. L. c. 6, § 172B; specific agencies that establish, modify, or enforce child support payments, G. L. c. 6, § 172D; the Department of Early Education and Care, G. L. c. 6, § 172F; children's camps, G. L. c. 6, § 172G; and other children's programs, G. L. c. 6, § 172H. Certain delinquency adjudications for drug trafficking result in driver's license suspensions. G. L. c. 90, § 22 1/2. See G. L. c. 94C, § 32E. If a juvenile

thereof may be significant in the initial decision' whether to charge a juvenile with a crime." Humberto H., supra, quoting Police Comm'r of Boston v. Municipal Court of the Dorchester Dist., 374 Mass. 640, 656 n.10 (1978). Moreover, juvenile adjudications can be predicate offenses for sentencing enhancements. See Commonwealth v. Foreman, 63 Mass. App. Ct. 801, 802 (2005). Therefore, a juvenile's interest in maintaining the benefit of the pretrial probation agreement is significant.

Nonetheless, the juvenile's liberty interest here is less than that in a postdisposition probation revocation hearing, where a juvenile faces immediate incarceration. See Juvenile Court Standing Order 1-17(VIII)(e), (f) (2017). As stated, the only direct recourse for a violation of pretrial probation is return to the trial calendar. See Tim T., 437 Mass. at 596. Although the stigma and collateral consequences associated with a delinquency adjudication are detrimental to the juvenile, many of those consequences attached when the initial charges were

---

is adjudicated delinquent on a felony charge, and a school believes that the presence of that juvenile in the school would have a "substantial detrimental effect on the general welfare of the school," the school may expel the juvenile. See G. L. c. 71, § 37H 1/2. Any juvenile who is "adjudicated a youthful offender [for] an offense that would be punishable by imprisonment in the [S]tate prison if committed by an adult" must submit a deoxyribonucleic acid sample to the probation service. G. L. c. 22E, § 3.

brought, and only increase to a limited degree upon the revocation of pretrial probation.  Therefore, revocation implicates a lesser private interest in the pretrial context than in the postdisposition context.

b.  Erroneous deprivation.  We next examine "the risk of an erroneous deprivation of [these private interests] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards."  See Noe, 480 Mass. at 203, quoting Mathews, 424 U.S. at 334-335.  In the context of postdisposition probation revocation, a probationer has no remaining procedural safeguards after the revocation process. If a judge revokes postdisposition probation, the judge may sentence the probationer immediately.  See Juvenile Court Standing Order 1-17(VIII)(e), (f).

This risk stands in sharp contrast to the pretrial probation revocation setting.  As discussed supra, the resumption of a prosecution can have detrimental effects on the juvenile, apart from any potential later finding of delinquency. The most significant interests at stake for the juvenile, however, are the avoidance of a delinquency finding and the possible incarceration that could follow.  Those interests are protected by the full array of trial rights, even if a judge revokes pretrial probation.  Therefore, the risk of erroneous deprivation is much lower in the pretrial probation context, and

the probable value of additional safeguards is reduced.

c. Government interests. The government's interests in the pretrial probation context are quite similar to those in the postdisposition probation revocation context. In both contexts, the government has an interest in achieving an "efficient and economic administration of its affairs" (citation omitted). Querubin, 440 Mass. at 117. See Durling, 407 Mass. at 116 ("Commonwealth has an interest in expeditiously dealing with [probation violations]"). The application of the Durling procedures could frustrate this interest by delaying revocation proceedings. See Commonwealth v. Pena, 462 Mass. 183, 185 & n.3 (2012) (thirteen months between initial violation notice and revocation hearing); Durling, supra at 110 (five months between violation notice and revocation hearing).

The government may have an even greater temporal interest in the pretrial context because a lengthy revocation process could lead to the Commonwealth prosecuting "a stale case, with all the difficulties that plague such a delayed trial -- disintegrating evidence, fading memories, inability to locate crucial witnesses." See Commonwealth v. Powell, 453 Mass. 320, 327 (2009), quoting Tim T., 437 Mass. at 596. This concern does not exist in the postdisposition probation context, where the underlying charges already have been adjudicated.

In addition, the government has an interest in ensuring

compliance with the lawful orders of its courts. See Paquette
v. Commonwealth, 440 Mass. 121, 129 (2003), cert. denied, 540
U.S. 1150 (2004). Application of the postdisposition
requirements could result in fewer revocations, which might
weaken incentives for compliance with pretrial conditions of
probation. On the other hand, the government also has an
interest in ensuring a "reliable, accurate evaluation of whether
the probationer indeed violated the conditions of his [or her]
probation." See Durling, 407 Mass. at 116. Overall, the
government interests in the pretrial probation context are
similar to those in the postdisposition probation context.

d. Balancing. The balance of the interests in the
pretrial probation context is quite different from those in the
postdisposition context. Avoiding incarceration, the foremost
private interest in each context, is only indirectly at stake in
the context of pretrial probation. The risk of erroneous
deprivation also is lower in the pretrial context, as the
juvenile retains all trial rights. As stated, the government
interest is similar in the two contexts. Therefore, balancing
all these interests, the full procedural requirements set forth
in Durling, 407 Mass. at 113, 118, are not required.

The juvenile, however, retains certain procedural due
process rights. "An essential principle of due process is that
a deprivation of life, liberty, or property 'be preceded by

notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985), quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950). Given the juvenile's substantial interest in maintaining the benefit of the pretrial probation agreement, the juvenile must receive written notice of the alleged violations and an opportunity to contest those allegations. The type of hearing and the standard of proof, however, depend on the type of violation.

We derived the probable cause standard of proof for violations based on new criminal offenses from G. L. c. 119, § 54A, as discussed supra. Probable cause generally can be established based on the "four corners" of the application for a complaint, without an evidentiary hearing. See Newton N., 478 Mass. at 751, quoting Humberto H., 466 Mass. at 565 (motion to dismiss for lack of probable cause is based on "four corners of the complaint application"). See also Commonwealth v. Orbin O., 478 Mass. 759, 762 (2018). To determine whether probable cause and nonevidentiary hearings comply with due process here, we compare the revocation of pretrial probation with predisposition proceedings that utilize those procedures. Probable cause is the standard of proof constitutionally required for arrests, Gerstein v. Pugh, 420 U.S. 103, 111 (1975), and delinquency complaints, Humberto H., supra at 565-566. Nonevidentiary

proceedings, without the right to confrontation, are constitutionally sufficient in bail hearings, Querubin, 440 Mass. at 118; motions to dismiss for lack of probable cause, Humberto H., supra at 565; and motions for continuances prior to dangerousness hearings, Commonwealth v. Lester L., 445 Mass. 250, 251 (2005).

Based on the balancing test set forth in Mathews, 424 U.S. at 334-335, those predisposition proceedings require at least as much procedural protection as does a proceeding for the revocation of pretrial probation.  Arrests, delinquency complaints, and motions for continuances of dangerousness hearings all can lead to immediate incarceration.  See Gerstein, 420 U.S. at 111 (arrest); G. L. c. 276, § 58 (delinquency complaint can result in juvenile being held on bail); G. L. c. 276, § 58A (4) (continuance of dangerousness hearing). Pretrial probation involves a lesser private interest because it cannot result directly in immediate incarceration.  See Rodriguez, 441 Mass. at 1003, citing Tim T., 437 Mass. at 596. Some of those predisposition proceedings also involve greater government interests than are present in the pretrial probation context.  For example, continuances of dangerousness hearings involve the government's interest in preventing dangerous persons from committing acts of violence.  See G. L. c. 276, § 58A (4).  But the common thread in all these contexts is that

trial rights remain intact, providing a safeguard against more serious erroneous deprivations.  We therefore conclude that the revocation of a juvenile's pretrial probation, without an evidentiary hearing, based on probable cause that a new criminal offense was committed, complies with due process.

The issuance of a complaint, of course, does not allow the Commonwealth unilaterally to revoke a juvenile's pretrial probation.  The imposition of pretrial probation is a court order that can be revoked only by the judge who is considering the revocation.  Cf. Commonwealth v. MacDonald, 50 Mass. App. Ct. 220, 223 n.8 (2000), S.C., 435 Mass. 1005 (2001) (noting that probation term negotiated by parties as part of plea agreement is "independently enforceable as an order of the court").[9]  In order to revoke pretrial probation based on a new offense, the judge must make an independent finding of probable cause.[10]

---

[9] We note as well that the Commonwealth clearly is not required to bring a motion to revoke pretrial probation whenever a new delinquency complaint is issued.  The Commonwealth can use its executive discretion to allow pretrial probation to continue, notwithstanding the new complaint.

[10] In a revocation hearing based on a new delinquency complaint, the subject of debate will be whether the application for the complaint establishes probable cause.  This is the same subject matter as a potential motion to dismiss the new complaint for lack of probable cause.  See Commonwealth v. Humberto H., 466 Mass. 562, 564-565 (2013) (juvenile can bring motion to dismiss complaint for lack of probable cause).

The juvenile in this case argues that he was not given sufficient notice that his pretrial probation could be terminated based solely on a finding of probable cause. See Commonwealth v. Ruiz, 453 Mass. 474, 479 (2009) (due process "requires that a defendant sentenced to probation receive fair warning of conduct that may result in the revocation of probation"). Although we conclude that the judge's actions here complied with due process, we recognize that warnings regarding the standard of proof of a pretrial probation violation would be helpful. Therefore, we urge that, when a judge places a juvenile on pretrial probation, the judge warn the juvenile that the pretrial probation can be terminated if a judge finds probable cause to believe that the juvenile committed a new criminal offense. Cf. Paquette, 440 Mass. at 126, quoting G. L. c. 276, § 58 (juvenile "must be advised that . . . 'should [he or she] be charged with a crime[,] . . . bail may be revoked'").

Noncriminal violations require different procedures. By definition, there is no complaint or police report, so evidence must be introduced to establish a violation. The balancing of

---

Despite the overlapping subject matter, the motion to dismiss is a separate proceeding and a separate judicial determination. If the Commonwealth establishes at a revocation hearing probable cause that a violation occurred, the juvenile is not foreclosed from later bringing a motion to dismiss under Humberto H., supra. If a subsequent motion to dismiss is successful, pretrial probation need not be reinstated.

the factors from Mathews, 424 U.S. at 334-335, also is different.  Violations of noncriminal terms of probation are generally less harmful to society than criminal violations.  Compare Juvenile Court Standing Order 1-17(III) (requiring probation service to issue notice of violation whenever juvenile probationer is charged with new offense) with Juvenile Court Standing Order 1-17(IV) (giving probation service discretion whether to issue notice of violation for noncriminal conduct).  See Federal Sentencing Guidelines Manual § 7B1.1, 7B1.4 (updated Nov. 2010) (shorter sentences for violations of noncriminal conditions of probation); Brown v. Plata, 563 U.S. 493, 537 (2011) (implying that noncriminal violations are less harmful).  Therefore, the government interest in revocations based on noncriminal violations is reduced, and procedural due process requires greater protections.  See Mathews, supra.  We conclude that proof by a preponderance of the evidence, a higher standard than probable cause, is required.  Compare Commonwealth v. Brennan, 481 Mass. 146, 149 (2018) (probable cause is established by "reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense"), with Commonwealth v. Bright, 463 Mass. 421, 434 & n.19 (2012) (preponderance means "more likely than not").  Because of the diminished government interest, and because an evidentiary hearing must be held, we

also conclude that the juvenile must be given the opportunity to introduce evidence to rebut allegations of noncriminal violations.  Although the juvenile's right to present rebuttal evidence occasionally may require the revocation hearing to be continued to the next court date, we anticipate that such delays will not be protracted.

Conclusion.  We answer the reported questions as follows:

1.  "General Laws c. 276, § 58B, does not govern the revocation of pretrial probation of a juvenile."

2.  "To revoke a juvenile's pretrial probation based on a new criminal offense, a judge must find probable cause that the juvenile committed the offense.  All other violations must be proved by a preponderance of the evidence."

3.  "For a revocation of a juvenile's pretrial probation, due process requires notice of the alleged violations, opportunity to be heard, and a judicial finding that a condition was violated.  The other evidentiary requirements in Commonwealth v. Durling, 407 Mass. 108 (1990), do not apply to juvenile pretrial probation revocation hearings."

The matter is remanded to the Juvenile Court for further proceedings consistent with this opinion.

So ordered.